IN THE MATTER OF THE ASSESSMENT OF PROPERTY OF THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, BY BOTH THE STATE BOARD OF ASSESSORS AND THE LOCAL ASSESSORS OF JERSEY CITY.

Argued November 4, 1904—Decided February 27, 1905.

1. The opinion in this case deals with the question whether certain pieces of property in Jersey City belonging to the Central Railroad Company of New Jersey were "used for railroad purposes," so as to render them assessable by the state board of assessors, under the act of March 27th, 1888. *Gen. Stat., p.* 3324.

2. The provision in that act that, in case assessments have been made both by the state board and by the local authorities; the court shall direct the unlawful assessments to be canceled, and shall make such order regarding the return of any unlawful tax which has been paid as the court shall deem just, indicates that the court, in its determination as to the return of such tax, is not to be governed absolutely by the cancellation of the assessment, but is to be guided by the equities arising out of all the circumstances.

On application to review assessment of property of the Central Railroad Company under act of March 27th, 1888.

Before Justices Dixon, Fort and Swayze.

For the state, *Robert H. McCarter*, attorney-general.

For Jersey City, *Robert Carey*.

For the Central Railroad Company, *George Holmes.*

The opinion of the court was delivered by

Dixon, J. By the revised act for the taxation of railroad and canal property, approved March 27th, 1888 (*Gen. Stat., p.* 3324), it is ordained that all the property of any railroad or canal company not used for railroad or canal purposes

FEBRUARY TERM, 1905.

87

*43 Vroom.* In re Assessment of Property of Central R. R. Co.

shall be assessed and taxed by the same assessors, in the same manner and at the same rate as the taxable property of other owners in the same municipal division or taxing district, and that all property of any railroad or canal company used for railroad or canal purposes shall be assessed by a state board of assessors. It·is also enacted that, in case any property of any railroad or canal company shall in any year be assessed by both the local authorities and the state board, the Supreme Court, or any three justices thereof assigned by the Chief Justice, shall determine in a summary manner the character of the property and by which assessors the same has lawfully been assessed, and the judgment of the court shall direct the cancellation or reduction of either assessment, as the character of the property may require, and shall make such order as to the return to the taxpayers of any tax, or any portion thereof, that may have been paid to the state or to any taxing district not entitled thereto as such court shall deem just. The proceedings for this determination are to be instituted upon an application made by any of the parties interested.

Under this statute the Central Railroad Company of New Jersey presented to this court two petitions, one in November, 1900, the other in March, 1904, setting forth that part of its terminal yard and other property in Jersey City had been assessed both by the local authorities and by the state board, and praying the relief afforded by the statute. To each petition is annexed a schedule showing the properties in question, and it will be most convenient to consider them as the items are there presented.

SCHEDULE NO. 1—ITEMS 1, 2 AND 3.　SCHEDULE NO. 2— ITEMS 28, 29 AND 30.

During the periods for which these properties were doubly assessed they were used exclusively by the United States Express Company for stabling its horses, and not at all for railroad purposes. The state's assessments thereon should be canceled.

In re Assessment of Property of Central R. R. Co.  72 *N. J. L.*

SCHEDULE NO. 1—ITEM 4.   SCHEDULE NO. 2—ITEM 31.

This plot was doubly assessed in the years 1894 to 1901, inclusive, and during that period was used exclusively by the Hudson Transfer Company as a stable.  The state's assessments thereon should be canceled.

SCHEDULE NO. 1—ITEM 5.   SCHEDULE NO. 2—ITEM 32.

This plot was doubly assessed in the years 1894 to 1901, inclusive, and during that period was used as a storehouse and office by the Rankin Roofing Company exclusively.  The state's assessment thereon should be canceled.

SCHEDULE NO. 1—ITEM 6.

This plot was doubly assessed in the years 1894 to 1897, inclusive.  During that period it was occupied exclusively by the Pullman Parlor Car Company for storing ice and other articles used by that company in connection with its cars, which were hauled over the lines of the Central Railroad Company for the transportation of the passengers of the latter company who chose to ride in parlor cars.  The railroad company derives no profit from the use of the property other than the accommodation afforded to its passengers.  We think that plot was used for railroad purposes, and the city's assessments thereon should be canceled.

SCHEDULE NO. 1—ITEM 7.   SCHEDULE NO. 2—ITEMS 33 AND 34.

This plot was doubly assessed in the years 1889 to 1901, inclusive, and during that period was rented by the Central Railroad Company to the Baltimore and Ohio Railroad Company, and used by the latter company in an express business exclusively, and not at all for railroad purposes.  The state's assessments thereon should be canceled.

SCHEDULE NO. 1—ITEM 8.    SCHEDULE NO. 2—ITEM 35.

This property was assessed by both state and city in the years 1894 to 1902, inclusive.  It consists of trestlework, upon which are laid railroad tracks, and beneath the tracks are coal pockets.  The structure is used by the Central Railroad Company for delivering coal to the Communipaw and Manhattan Coal Companies, and by those companies for the storage and delivery of coal.  The use by the Central company is evidently for railroad purposes; the use by the coal companies is evidently not for railroad purposes.  The tracks and whatever would be necessary to support them should be assessed by the state board; the residue should be assessed by the city. There is nothing in the case to show whether or not such a division was observed in the assessments under consideration, and hence we cannot decide that double assessments were levied.  Consequently we cannot disturb any of these assessments.

SCHEDULE NO. 1—ITEM 9.    SCHEDULE NO. 2—ITEMS 36, 37 AND 38.

This property was assessed by both state and city in the years 1891 to 1903, inclusive.  It consists, so far as it was doubly assessed, of a wharf and trestle.  The trestle is used exclusively by the Central Railroad Company for the delivery of coal to the Communipaw Coal Company, and the coal is dumped directly from the cars into the holds of vessels lying at the wharf.  The coal company has an office on the wharf for the transaction of its business at that point.

We think that the wharf and trestle are used for railroad purposes, and therefore the city's assessments, so far as they are levied on the property included in the state's assessments, should be canceled, except that the city's assessment on the coal company's office should stand and the state's assessment thereon should be canceled.  The testimony does not enable us to apportion these assessments.  So far as the city's assessments affect property beyond the boundaries of the state's assessment, they are not subject to consideration in this proceeding.

SCHEDULE NO. 1—ITEMS 10, 11, 13 AND 14.    SCHEDULE NO. 2—ITEMS 39, 40 AND 41.

This property, during the period of double assessment (1891 to 1903, inclusive), was leased by the Central Railroad Company to the North River Coal and Wharf Company, and used by the latter exclusively in the transaction of its business. It has not been used for railroad purposes, and the state's assessments thereon should be canceled.

SCHEDULE NO. 1—ITEM 12.    SCHEDULE NO. 2—ITEM 42.

This plot contains less than two acres, and was doubly assessed in the years 1894 to 1902, inclusive.   Prior to 1902 it was leased by the Central Railroad Company to private parties and used by them for private purposes.   The state's assessments before 1902 should be canceled.   Since 1901 the private tenants have been removed, the land has been prepared for and partly occupied by railroad tracks, and the whole is to be thus occupied in the near future.   Under the view expressed in *New Jersey Junction Railroad Co.* v. *Jersey City,* 34 *Vroom* 120, this property, since 1901, has been taxable by the state only, and the city assessment for 1902 should be canceled.

SCHEDULE NO. 1—ITEM 15.    SCHEDULE NO. 2—ITEM 47.

This plot of about six acres was doubly assessed in the years 1893 to 1903, inclusive, and during that period was used by the Central Railroad Company for railroad purposes only.   The city's assessment, which is levied on a much larger tract, including this, should be reduced so as to leave that plot untaxed by local authority.

SCHEDULE NO. 1—ITEM 16.

This plot was doubly assessed in the years 1885 to 1897, inclusive, during which period it was used by the railroad company for railroad purposes only.   The city's assessment should be canceled.

*43 Vroom.* In re Assessment of Property of Central R. R. Co.

### SCHEDULE NO. 2—ITEMS 43 AND 45.

This tract comprises nearly fifty-six acres, partly under water and partly made ground. The process of filling in the tract is still under way and will require a number of years for completion. The real estate agent of the railroad company testifies that it is being constructed for a yard and will be put to use as fast as it is completed, but the kind of use is not shown with any degree of certainty. Evidently the tract is not now "used for railroad purposes," and we think it does not come within the liberal gloss put by Mr. Justice Lippincott on this statutory phrase, in 34 *Vroom* 121, as being "held solely for fairly anticipated railroad purposes." It seems rather to "stand in the category of those quantities of land, limitless by law, which railroad companies frequently acquire in speculative anticipation of the future wants of their roads," and which, according to the opinion delivered for the Court of Errors and Appeals in *New Jersey Railroad and Canal Co.* v. *Jersey City,* 26 *Vroom* 129, are not subjected by this statute to state taxation. The tract was doubly assessed in the year 1903, and the state's assessment should be canceled.

### SCHEDULE NO. 2—ITEM 44.

This is a plot about six hundred feet long and one hundred and fifty feet wide, lying in the terminal yard of the Central Railroad Company. Running through the middle of the plot are three tracks, which at present are used for cars transporting structural iron for the Fuller Construction Company. The open ground adjoining the tracks is used by this company for unloading the iron brought in, assorting it for reshipment on the cars of the railroad company and reloading it upon those cars to be taken to its ultimate destination. We think this is a use of the plot for railroad purposes. The plot was doubly assessed in the year 1903, and the city's assessment should be canceled.

### SCHEDULE NO. 2—ITEM 46.

This is a plot of eight acres in the terminal yard. There are no tracks upon it, but it is used exclusively by the railroad company for the storage of ties, rails and anything pertaining to the construction, repair and maintenance of the railroad. These are railroad purposes. The plot was doubly assessed in the year 1903, and the assessment by the city should be canceled.

### SCHEDULE NO. 1—ITEMS 17, 18, 19 AND 20.

Item 17 was doubly assessed in the years 1896 to 1899, inclusive, and items 18, 19 and 20 in the years 1890 to 1899, inclusive. These plots were owned by the railroad company, but the only portion of them used for railroad purposes was that occupied by the Henderson street branch of the railroad. The rest was either leased to and occupied by private parties or was unused and not at present intended for use. So much as was useful for the tracks and trains, and the loading and unloading of cars, was assessable by the state only; the residue was assessable by the city only. The evidence does not enable us to make the proper apportionment, and hence we cannot order the cancellation of either assessment.

### SCHEDULE NO. 1—ITEM 21.  SCHEDULE NO. 2—ITEMS 26 AND 27.

This property was doubly assessed in the years 1892 to 1903, inclusive. During that period it was occupied by trestles and coal pockets similar to those on lot 46 G, above mentioned, and was used by the Central Railroad Company and the Hudson Coal Company in substantially the same manner as lot 46 G was used by the railroad company and the Communipaw and Manhattan coal companies. Our opinion regarding this property is the same as that above expressed respecting lot 46 G.

SCHEDULE NO. 1—ITEM 22.

This item seems to have been embraced in the petition by mistake.

SCHEDULE NO. 2—ITEM 25.

This plot was doubly assessed in the years 1899 to 1903, inclusive. During that period it was occupied by railroad tracks and used solely for railroad purposes. The city's assessments should be canceled.

SCHEDULE NO. 1—ITEMS 23 AND 24.   SCHEDULE NO. 2—
ITEM 48.

These properties were not adverted to in the testimony and are supposed to be withdrawn from consideration.

There remains for consideration that provision of the statute which directs the court to make such order as to the return to the taxpayer of any tax or any portion thereof that may have been paid to the state, or to any taxing district not entitled thereto, as the court shall deem just.

The duty thus cast upon the court has not been affected by the act concerning appropriations of money, approved June 10th, 1895. *State* v. *Erie Railroad Co.,* 50 *All. Rep.* 918. The court is still required to make, in the judgment rendered, such order for the return of taxes "as the court shall deem just." This expression indicates that the court is not to be governed absolutely by the cancellation of the assessment, but is to be guided by the equities arising out of all the circumstances.

The only tax illegally assessed which seems to have been paid to Jersey City is so much of the assessments, levied during the years 1893 to 1903, on plot 22, block 2154 (being items 15 and 47), as should be apportioned to the six acres assessed by the state as the Phillips street branch. We will reserve any order respecting the return of this tax until its amount is ascertained.

Many of the taxes illegally assessed by the state board have been paid to the state. But the briefs submitted on behalf of the state and the railroad company do not refer to the considerations pertinent to the return of those taxes, and that matter should therefore stand over for the submission of other briefs.