(76 N. W. Rep. 225.)

---

CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY vs. CASS COUNTY, et al.

Opinion filed June 20th, 1898.

**Constitutional Questions—Taxation of Railroads.**

Under section 179 of the constitution of this state, which declares that "the franchise, roadway, roadbed, rails and rolling stock of all railroads operated in this state shall be assessed by the state board of equalization," etc., the word "roadway" includes, not only the strip of ground upon which the main line is located, but also all ground necessary for the construction of side tracks, turnouts, connecting tracks, station houses, freight houses, and all other accommodations reasonably necessary to accomplish the objects for which the railroad company was incorporated.

**Questions Not Involved Not Decided.**

Constitutional questions argued by counsel, but not involved in the case, will not be discussed.

Appeal from District Court, Cass County, *Pollock*, J.

Action by the Chicago, Milwaukee & St. Paul Railway Company against Cass County and others to set aside certain taxes. Plaintiff had judgment, and Cass County appeals.

Affirmed.

*Fred B. Morrill*, States Attorney, for appellant.

*Ball, Watson & Maclay,* for respondent.

BARTHOLOMEW, J. Section 179 of the Constitution of North Dakota reads as follows: "All property, except as hereinafter in this section provided, shall be assessed in the county, city, township, town, village or district in which it is situated, in the manner prescribed by law. The franchise, roadway, roadbed, rails and rolling stock of all railroads operated in this state shall be assessed by the state board of equalization at their actual value and such assessed valuation shall be apportioned to the counties, cities, towns, townships and districts in which said roads are located, as a basis for taxation of such property in proportion to the number of miles of railway laid in such counties, cities, towns, townships and districts." Pursuant to this provision, the state board of equalization, in the year 1896, assessed the plaintiff railroad at a certain sum per mile upon its track mileage in the state, and the assessment so made was duly certified as

required by Article 18 of Chapter 18 of the Political Code, being sections 1331 to 1335, inclusive, of the Revised Codes, by the state auditor to the auditors of the various counties into or through which said railroad runs. The said railroad extends into Cass County, and has its present northern terminus in the City of Fargo, in said county. Within said city it has usual terminal facilities, consisting of passenger and freight depots, round house, coal sheds, oil and water tanks, ice house, etc., with proper side tracks and spur tracks for reaching the same. Plaintiff's main track in the City of Fargo runs for the most part upon a public street, but it owns a large number of lots, and an unplatted tract of land adjoining or near to its main track, and it claims that it uses all such real property for purposes directly pertaining to the operation of its road. In 1896 the local assessor of the City of Fargo, on whose assessment the city, county, and state taxes are based proceeded to assess the said lots and the said unplatted tract of land so owned by plaintiff, and the same were placed upon the tax lists and taxes levied thereon. This action was brought to set aside and cancel such taxes on the ground that all of said property had been assessed by the state board of equalization, and that under the constitution the local assessor had no authority to assess the same, said property all being used for railroad purposes and being a part of the roadway of plaintiff. The answer denied that said property was used for railroad purposes, or that it constituted any part of the roadway of plaintiff. There was no other issue made by the pleadings. A trial to the Court resulted in a judgment canceling the tax as to a portion of the property, and refusing to cancel it as to the remainder. The Court canceled the tax as to the entire lot, where it was shown that any railroad building, or any portion thereof, rested upon such lot, and, where there were no buildings, to such portion of the lots as was necessary to give plaintiff a right of way 50 feet in width on each side of the center line of its side tracks and spur tracks. The round house is situated upon the unplatted tract, and for that and spur track leading thereto the court allowed six acres of ground as reasonably necessary for its proper use. The tax was canceled upon one lot upon which there was no structure, and which was touched by no right of way, but the use of which was shown to be reasonably necessary in order to enable the public to reach plaintiff's passenger depot with hacks and conveyances. The County of Cass appeals from the judgment.

It will be conceded that if the word "roadway," as used in section 179 of the state constitution, includes the property here in controversy, then the state board of equalization must consider the value thereof in arriving at the average mileage valuation of the road, and the local assessor would be without authority to assess the same. It becomes important, then, to ascertain the significance of the word "roadway." The same word appears in the same connection in a corresponding section of the Constitution of the State of California

(section 10, Art. 13); and in *San Francisco & N. P. R. Co.,* v. *State Board of Equalization,* 60 Cal. 12, 34, the Supreme Court of that state, in construing this section, said: "The roadway is the right of way, which has been held to be property liable to taxation." And in *City and County of San Francisco* v. *Central Pac. R. Co.,* 63 Cal. 467, after defining "roadbed," the Court say: "The roadway has a more extended signification, as applied to railroads. In addition to the part denominated 'roadbed,' the roadway includes whatever space of ground the company is allowed by law in which to construct its roadbed and lay its track." And this, we think, is the correct and generally accepted definition of the word when used in this connection. While the term "right of way" is generally used to designate the ground upon which a railroad company may lay its tracks and construct its necessary buildings, yet we frequently find the word "roadway" used as synonymous therewith. It follows then that, speaking of geographical extent, whatever is included in the former is also included in the lattter.

The case of *Chicago & A. R. Co.,* v. *People,* 98 Ill. 350, arose on the application of a local tax collector for a judgment for taxes against two certain tracts of land belonging to the railroad company, except a strip 100 feet in width extending through said tracts on which was situated the main line of the road. The evidence showed that outside of such strip the tracts contained about 32 acres of ground. One section of the revenue law of that state (Rev. St. 1874, p. 865, § 41) then in force required the railroad company to "make out and file with the county clerks of the respective counties in which the railroad may be located, a statement or schedule showing the property held for right of way," etc. The next section declared: "Such right of way * * * shall be held to be real estate for the purposes of taxation and denominated 'railroad track' and shall be so listed and valued." By other provisions the "railroad track" was assessed by the state board. The Court said: "What was intended by the enactment of this section of the statute by the use of the words here employed, 'such right of way'? Were these words intended to mean merely the strip of land a certain number of feet wide, upon which the railroad company had constructed its main track, or did the framers of the section intend to embrace, not only the main line of the road, but all side tracks, turnouts, and switches which are connected with the main track, and which are in actual use by the railroad company as a common carrier? We can see no reason why the term 'right of way' should be confined to the land over which the main track of a railroad should be constructed. The land upon which a side track, a switch, or a turnout is built and in actual use by the company, in the business for which it was organized, for all practical purposes is as much held for right of way as is the land upon which the main track is constructed. In the operation of a railroad it is necessary that trains should pass each other, and hence the necessity of turnouts, switches, and side tracks. In

the loading of cars, transfer of cars, the making up of trains, and in innumerable other instances that might be named, in the prosecution of its business as a common carrier, side tracks, switches, and turnouts are as indispensable to a proper transaction of its business as the main track itself. We are therefore of the opinion that the land held and in actual use by a railroad company for side tracks, switches, and turnouts must be regarded, within the meaning of the revenue law, as a part of the right of way of the company. It is used in the transportation of freight, and also for the purpose of carrying passengers, alike with the land upon which the main track is constructed; and upon what principle the land upon which the main track is laid can be held to be right of way, and the land over which a side track, switch, or a turnout passes can be termed something else, we are at a loss to understand." Further along the Court said: "From the evidence, it is manifest that the railroad company has constructed tracks around the entire 32 acres of land; that it is covered with side tracks, switches, and turnouts connected with its main track, and in constant use by the railroad company in the prosecution of its legitimate business as a common carrier, for which it was organized under a charter granted by the state. Buildings have been erected on this land by the company, termed 'machine shops,' 'car shops,' 'round houses,' etc., where repairs are made for the company's rolling stock; but this use does not change the character of the manner in which the land is held. It is still held as right of way, notwithstanding such buildings." This is a later case than *Railroad Co.* v. *Paddock,* 75 Ill. 616, and, if the two are inconsistent, the later case must control, especially as it has been expressly followed and approved in *Chicago & A. R. Co.* v. *People,* 99 Ill. 464. The Indiana statute relating to the taxation of railroads is practically the same as the Illinois statute already referred to. The case of *Pfaff* v. *Railroad Co.,* 108 Ind. 144, 9 N. E. Rep. 93, involved the same question. The Court said: "The important question here is, what is included in the term 'railroad track'? Does that term include the lands described in the complaint, being small tracts of land and lots which are occupied by the side tracks, turnouts, round house, a small repair shop, coal and wood sheds, water tanks, and turntables, etc.?" After referring to certain sections of the statute, the Court say: "The more specific inquiry here is, do the lots and lands described in the complaint and occupied as therein described, constitute a part of the right of way?" After full consideration, the Court answers the question in the affirmative. It refers to the case in 98 Ill. 350, as deciding the same point, and quotes from and approves that case. In some states the exemption from local taxation is held to cover such property, and only such, as might be taken by condemnation proceedings. See *State* v. *Hancock,* 33 N. J. Law, 315; *Milwaukee & St. P. Ry. Co.* v. *City of Milwaukee,* 34 Wis. 271. Among the powers conferred by our statutes upon railroad corporations is the following (subdivision 3, § 2947, Rev.

Codes) : "To acquire under the provisions of the statute on eminent domain or by purchase all such real estate and other property as may be necessary for the construction, maintenance and operation of its railroads and the stations, depot grounds and other accommodations reasonably necessary to accomplish the objects of its incorporation." It will not be questioned but that this plaintiff might have acquired by condemnation proceedings, under the chapter on eminent domain, all the real property which the trial court relieved from local taxation in this case. In this state, land that may be acquired by condemnation proceedings by a railroad company exactly corresponds with the broad definition given to the term "right of way" by the Courts of Last Resort in Illinois and Indiana. That under our statutes the term should receive the same construction we have no doubt. The cases cited abundantly demonstrate the necessity, for commercial purposes, of this definition, and this necessity grows more imperative every day. The services which the public expect and demand from the railroad companies constantly grow more onerous. It would, indeed, be a mistaken policy, in our rapidly developing state, to curtail any of the agencies which tend to render this service efficient. We hold, then, that the right of way of a railroad company, or, using the constitutional phraseology, the "roadway" of a railroad company, includes, not only the strip of ground upon which the main line is constructed, but all ground necessary for the construction of side tracks, turnouts, connecting tracks, station houses, freight houses, and all other accommodations reasonably necessary to accomplish the object of their incorporation. Under our constitution, this roadway must be assessed by the state board of equalization, and is not assessable by the local assessor. The evidence shows that all the ground upon which the trial court canceled the local tax comes within our definition of "roadway." Its judgment must therefore be affirmed.

Another question was argued at length, and with much ability, in the briefs of all the counsel in the case, and that is whether or not, under our consitution, the local assessor can assess the improvements on the roadway, other than "roadbed, rails, and rolling stock," separate and apart from the roadway itself. This is a constitutional question of much importance, and perhaps not free from difficulties. It ought not to be decided unless its decision is necessary to determination of the case. Not only do we deem its decision unnecessary in this case, but we cannot conceive how the question can arise on this record. No such assessment of improvements has ever been made or attempted. No action has been brought to cancel any such assessment. The assessment was of lots and parcels of land. It may be that in fixing the value thereof the improvements thereon were considered. But that fact cannot affect our decision. The assessment was of land. If that was assessable, the whole tax must stand. If it was not assessable,—and we hold that it was not,— the whole tax must fall. Should we hold with respondent that the

improvements were not locally assessable, the tax would not the more certainly fall; and, should we hold with appellant that they were locally assessable, the tax would not the less certainly fall, because neither the trial court nor this court could make an assessment or determine the separate value of the improvements. And the tax being unseverable, and a part illegal, the whole must fall. The only possible condition under which the question of the local assessment of improvements could be decisive of this case would be this: If the lands were locally assessable, and the improvements not, then, if the improvements were included, that fact would invalidate the entire tax. But no such claim is made, or could for a moment be made, under our constitution. The proposition of the learned counsel for appellant is exactly the reverse. He contends that, granting that the lands are not locally assessable, yet the improvements are so assessable. The proposition is of no importance in this case.

Affirmed. All concurr.