This action was brought to recover certain money paid under protest by plaintiff to the city of Stockton for taxes levied by the city for the year 1900, based upon assessments made by the city assessor. Plaintiff was a railroad corporation, operating a continuous line of railroad from said city of Stockton in San Joaquin County, through said San Joaquin County, and other counties in the state. Its claim was that the assessments in question were illegal and void, for the reason that the property therein assessed could be assessed only by the state board of equalization, in the manner provided by section 10 of article XIII of the constitution, and that it was in fact so assessed by such state board for that year, and the taxes thereon paid. As to a portion of the property the trial court sustained the claim of plaintiff, and, the assessment being such as to enable the court to segregate the tax paid thereon from the total amount, gave plaintiff judgment for the amount thereof, — viz. $8.20, with interest and costs of suit. As to the remainder of the property, the trial court found against plaintiff, and denied it any relief. Plaintiff appeals from the judgment and from an order denying its motion for a new trial.
The through line of plaintiff's road commenced in the city of Stockton, on Weber Avenue, near the junction of Madison Street, and ran thence west on Weber Avenue and through block G to Edison Street, thence south on Edison Street to Taylor Street, and thence east on Taylor Street, a street sixty feet wide. The assessments complained of included portions of said block G, and it was as to this property that the trial court sustained the claim of plaintiff, so that we are not here concerned with any question as to the validity of that portion of the assessment. The other property covered by the assessments assailed was as follows, viz.: First. Three adjoining blocks of land, each about two hundred by three hundred feet in area, known as blocks 21, 22, and 23, abutting on the northerly line of Taylor Street, acquired, appropriated *Page 85 
and used exclusively for station purposes. On block 23 there was a passenger depot. On block 22 there was a small building, and a spur track across the corner, running into and terminating in block 21, on which was a freighthouse and said spur track with sidings. Second. A tract of land containing about twenty-five acres, lying west of the main line. On this were a roundhouse, machine-shops, storehouse, and materials to be used for construction purposes. There were about thirteen tracks on this tract used for switching and repairing purposes, and also a water-tank. Third. A parcel of land containing about 2.81 acres, lying several thousand feet northwest of the main line and north of Weber Avenue, and bordering on the water-front line of Stockton Channel. This was connected by a switch with the main line, and there were three tracks running across the property. It was known as the cattle yard, and was used for the purposes of keeping stock carried by plaintiff, pending their transfer to and from steamboats. On this property there was a stock corral, covering about one third of the tract, a water-tank, and a chute connecting the corral with the steamboats. Fourth. A right of way two hundred by eighteen hundred feet, extending west from the main line, through the Boggs tract, to the west line of the city. On this had been constructed a roadbed upon which a single track had been laid, the same constituting a portion of the proposed extension of the railroad from Stockton to San Francisco. It had never been actually used or operated for railroad purposes, but has since been made and is now a part of the main line.
Section 10 of article XIII of our constitution is as follows, viz.: "All property, except as hereinafter in this section provided, shall be assessed in the county, city, city and county, town, township, or district in which it is situated, in the manner prescribed by law. The franchise, roadway, roadbed, rails and rolling-stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization at their actual value, and the same shall be apportioned to the counties, cities and counties, cities, towns, townships, and districts in which such railroads are located, in proportion to the number of miles of railway laid in such counties, cities and counties, cities, towns, townships, and *Page 86 
districts." By this provision of the constitution a system different and distinct from that provided for the assessment of other property has been furnished for the assessment of certain property of railroads operated in more than one county. The property coming within this special system is, however, only the property specifically designated in the constitutional provision, — viz. "the franchise, roadway, roadbed, rails, and rolling-stock"; and, as to all other property of such railroads, the general system of assessment by the local authorities in the place where the property is situated is applicable and mandatory, and any attempted assessment by the state board of equalization is beyond its power and absolutely void. (People v. SacramentoCounty, 59 Cal. 321; San Francisco etc. R.R. Co. v. State Board,60 Cal. 12, 29; San Francisco v. Central Pacific R.R., 63 Cal. 467, [49 Am. Rep. 98]; Santa Clara County v. Southern PacificR.R. Co., 118 U.S. 394, [6 Sup. Ct. 1132]; California v. CentralPacific R.R. Co., 127 U.S. 1, [8 Sup. Ct. 1073].) This much is not disputed by plaintiff, and the precise question presented for our determination is as to whether any of the property hereinbefore designated was a part of the "franchise, roadway, roadbed, rails, and rolling-stock" of plaintiff, within the meaning of those words as used in the constitutional provision. The opinions in the cases above cited are such as to render this question very easy of determination, and the apparent earnestness of learned counsel for plaintiff, and the elaborate briefs presented, furnish the only excuse for a somewhat extended discussion of the matter.
In view of the well-settled construction that has already been given to our constitutional provision, the contention of learned counsel for plaintiff for such a construction as will include within these terms so far as possible all property necessarily used in the operation of the railroad, so as to make all such property assessable as an entirety, is without force. In some states such a policy in the assessment of railroad property has been adopted, and, perhaps, strong arguments may be made in favor of such a method. That, however, is not a question for the courts. It is settled that California has not adopted any such policy, and that the determination of the question as to whether property of a railroad is to be *Page 87 
assessed locally or by the state board is in no way dependent upon the question as to whether it is essential to the operation of the railroad. By another provision of the constitution (art. XIII, sec. 2) it is required that land and the improvements thereon shall be separately assessed. Ever since the adoption of the constitution, with the single exception of the amendment of 1883 to section 3665 of the Political Code (Stats. 1883, p. 66, c. 40), including steamers used in transporting passengers, freight, and cars across waters which divide the road, in the property to be assessed by the state board, which amendment was held by the United States supreme court to be in violation of our constitutional provision and beyond the power of the legislature(California v. Central Pacific R.R., 127 U.S. 1, [8 Sup. Ct. 1073]), it has been the legislative construction of the two provisions, approved by the courts, that all improvements of a railroad, erected upon the space covered by the right of way, other than roadbed, rails, and rolling-stock, together with all other tangible property outside of such "right of way," which term is held to be synonymous with the term "roadway" used in the constitution, must be assessed by the assessor of the district where situated, in the same manner as other property. Prior to 1889 the legislature attempted to enumerate such property so locally assessable, as depots, stationhouses, shops, buildings, etc., but ever since 1889 the statute, after declaring that the state board must assess "the franchise, roadway, roadbed, rails, and rolling-stock of all railroads operated in more than one county," has provided as follows, viz.: "The depots, stations, shops and buildings erected upon the space covered by the right of way, and all other property owned by such person, corporation or association of persons, are assessed by the assessor of the county wherein they are situate."
This legislative construction has, as shown in the cases already cited, been approved by the courts. As to all improvements erected upon the space covered by the right of way, no matter how indispensable they may be to the proper operation of the railroad, it will be sufficient to refer to the case ofSanta Clara County v. Southern Pacific R.R. Co., 118 U.S. 394, [6 Sup. Ct. 1132], where, upon a review of our statutes and the decisions of this court, the assessment of the state *Page 88 
board was held invalid by the United States supreme court, because of the inclusion therein of fences constructed on the boundary line of the right of way. As to tangible property lying outside of the limits of the right of way, our own case of SanFrancisco v. Central Pacific R.R. Co., 63 Cal. 467, [49 Am. Rep. 98], arising prior to the amendment of section 3665 of the Political Code, in 1883, is in point. There the local assessment of certain steamers to carry passengers, freight and cars, absolutely essential to the operation of the railroad under the circumstances shown, was upheld, on the ground that they were not included within the category of property enumerated in the constitutional provision to be assessed by the state board. This construction of our constitutional provisions was again followed by the United States supreme court in California v. CentralPacific R.R., 127 U.S. 1, [8 Sup. Ct. 1073], where an assessment of such steamers by the state board was held invalid, notwithstanding that the amendment of 1883 to section 3665 of the Political Code purported to authorize such assessment, on the ground that the legislature could not make assessable by the state board that which the constitution required to be assessed locally. It thus appears that the indispensability of the property to the proper operation of the railroad is not a material factor in the determination of the question before us. As clearly appears from the foregoing, it was never designed that all property necessarily used in the operation of the railroad should be assessed by the state board, but only certain specified portions thereof, and in making the division into two classes, the people were not governed by considerations as to the necessity of any of such property to the operation of the road. The classification was made upon a totally different basis. As was said in San Francisco etc. Co. v. Scott, 142 Cal. 222, 229, [75 P. 575, 581], "It is plainly the general policy of the law that property situated in one county or city should be taxable in that county or city for local purposes for its actual value, and that that local subdivision alone should have the benefit of this value for the purpose of raising its revenue. This, indeed, is the basis of all local taxation, and it is recognized by the section in question, that the property which receives the benefit of local *Page 89 
government shall pay its proportion of the expenses thereof, apportioned according to actual value."
The only property in the state excepted from the local assessment required by the constitution is that portion of the property of railroads operated in more than one county, which is enumerated in section 10 of article XIII thereof, and this, as intimated in the above quotation, is not an exception to the general policy that the local subdivision wherein property is situated, shall have the benefit of the value thereof for the purpose of raising its revenue. It is true that the assessment value fixed by the state board on all property assessable by it is apportioned for local taxable purposes to the various legal subdivisions only "in proportion to the number of miles of roadway laid in such" subdivisions, but as long as the class of property to be so assessed includes only property which may be fairly valued at a certain rate per mile for the whole length of the railroad, having no greater value in one place than in another, the general policy heretofore stated is not in the slightest degree infringed upon, each legal subdivision receiving for local taxation purposes its proper proportion of the total value. While such a result may not have been attained with absolute exactness by the constitutional provision invoked here, however strictly it may be construed, it is apparent that such general policy requires such reasonable construction of the provision as is most clearly in accord therewith. The real object of the exception to the general method of assessment was to provide a more uniform and just method of valuing for taxation purposes what was designated by one of the members of the constitutional convention as the "continuous property" of such railroads, the property which might fairly be considered as being substantially the same, both in quantity and in value, the whole length of the road, and therefore capable of being valued at so much a mile. It had been discovered that the former method of valuation of portions of such property in the different subdivisions through which the road ran, by the local officers, had led to much inequality in the valuation of the same kind of property of the railroad, having substantially the same value in the different subdivisions, and to double taxation of some of such property, and it was concluded that the valuation of all such property by one tribunal, and *Page 90 
the apportionment thereof to the various subdivisions on a per-mileage basis, would more nearly insure a correct valuation of the whole of such property, and the giving to each subdivision its proper proportion thereof. This is manifest from the debates in the constitutional convention.
When we come to consider the character of the property specified in the constitutional provision in the light of the fact that the terms there used were not intended to include all property essential to the operation of the road, this object is plainly apparent. The intangible thing known as the "franchise" has no local situs, but appertains to the whole road, and the assessment of it as a unit and the per-mileage method of apportionment afford the only practicable way of giving to each legal subdivision its proper proportion of value. Property included in the term "rolling-stock," a definite and precise term as to the scope of which there can be no misunderstanding, which is in one place to-day and another to-morrow, being continually carried along the line of the road in the actual operation thereof, owing to its character and use, has no actual situs
entitling any particular subdivision through which the road runs to have the benefit of the taxation thereof in preference to any other subdivision. Such property is in no sense of the word "local property," and the apportionment of the total value of such property according to the length of the road, as in the case of the franchise, is the only practicable way of preventing double assessments thereof and determining the amount to which each subdivision is justly entitled. The term "roadbed" as used in this provision has been definitely held to include only the bed or foundation on which the superstructure of the railroad rests (San Francisco etc. R.R. Co. v. State Board, 60 Cal. 12;San Francisco v. Central Pacific R.R. Co., 127 U.S. 1, [8 Sup. Ct. 1073]), and the term "rails" necessarily means simply the rails in place on the roadbed constituting such superstructure.(San Francisco etc. R.R. Co. v. State Board, 60 Cal. 12.) Both of these classes of property are manifestly of such a nature that notwithstanding differences in their original cost in different places, their value for railroad purposes in different places along the whole line of the road is substantially the same, and the mileage method of apportionment of the total value is *Page 91 
simply a method by which each subdivision is given a proportion of the total value substantially equivalent to the value of such of the property as is situated within its boundaries.
The only remaining class of property named in the constitutional provision is "roadway." According to the ordinary and popular meaning of this term as applied to railroads, it includes simply the continuous strip of land, within which the railroad is constructed. This court has said that it is synonymous with "right of way," and includes "whatever space of ground the company is allowed by law in which to construct its roadbed and lay its track" (San Francisco v. Central Pacific.R.R. Co., 127 U.S. 1, [8 Sup. Ct. 1073]), which is but another way of saying that it is the continuous strip of land, not exceeding in width the nine rods permitted by law (Civ. Code, sec. 465, subd. 4), which the company acquires and uses for the construction and maintenance of its roadbed and railroad track. Such strip is, of course, ordinarily wider than the actual roadbed, and portions thereof are often used at points along the line for other than roadbed purposes, but as long as all improvements thereon other than roadbeds and rails are locally assessed, the property remaining for assessment by the state board, although it may have originally cost more in one place than in another, is, considering its use for railroad purposes, substantially of the same value the whole length of the road. (See San Francisco etc. Co. v. Scott, 142 Cal. 222, [75 P. 575].) Giving to the term "roadway" its ordinary and proper meaning, which, as we have seen, is the construction already given to it by this court, we give it a meaning which explains and justifies its inclusion with other classes of property specified in the constitutional provision, and which makes that provision consistent with the general policy of giving to each legal subdivision for local taxation purposes the benefit of the value of all property situated within its limits, while to construe it as including lands lying without such continuous strip, acquired and used exclusively for other purposes than the operation of its trains, not only gives it an unusual meaning, but would be utterly at variance with such policy, and entirely fail to explain its inclusion with the other property mentioned in the section. There can be no doubt that the term "roadway" as here *Page 92 
used must be confined as already indicated, and such we understand to be the construction heretofore given by this court.
Under this construction of our constitutional provision we have two general classes of railroad property for purposes of assessment, made entirely regardless of the question as to the necessity of the use of the property for the purposes of the railroad. One contains only such property as may fairly be said to be substantially the same, both in quantity and value, the whole length of the road, while in the other is all such property as may fairly be considered purely local. (See Nashville etc.R.R. Co. v. State, 129 Ala. 142, [30 So. 619].) We have examined the various decisions cited from other states by learned counsel for plaintiff, and, with possibly one exception, find none that can be said to at all support their contention for a broader construction of the terms used in our constitutional provision. The exception is the case of Chicago etc. Ry. Co. v.Cass County, 8 N.D. 18, [76 N.W. 239], wherein, upon a constitutional provision similar to ours, except that it is applicable to all railroads whether operated in one county or more, the conclusion is reached that the term "roadway" includes not only the strip of land upon which the road is constructed, but also all ground necessary for the construction of sidetracks, turnouts, connecting tracks, stationhouses, and all other accommodations necessary to accomplish the objects of the incorporation. We shall not attempt to distinguish that case from the one at bar, and will only say that the construction therein given to the term "roadway" is so at variance with the definition heretofore given by this court (San Francisco v. Central PacificR.R. Co., 63 Cal. 467, [49 Am. Rep. 98]), and with the general policy evidenced by our constitutional and statutory provisions, that we cannot follow it here. The other decisions cited are based upon provisions, either constitutional or statutory, so essentially different from our own law that they throw no light upon the question before us.
Plaintiff relies on the words "appendages, and adjuncts" in subdivision 4 of section 465 of the Civil Code. That subdivision empowers a railroad corporation "to lay out its road, not exceeding nine rods wide, and to construct and maintain the same, with a single or double track, and with *Page 93 
such appendages and adjuncts as may be necessary for the convenient use of the same." There is nothing in this that is inconsistent with our conclusion as to the meaning of the term "roadway." It does no more at most than to give the power to the company to acquire, construct and maintain such appendages and adjuncts as may be necessary for the convenient use of the road, and in no way purports to make such appendages and adjuncts a part of the roadway itself.
Under our views as to the proper construction of the constitutional provisions there can be no serious question as to the correctness of the conclusions reached by the trial court as to the first three assessments hereinbefore described. Clearly none of the land therein mentioned can be held to be a portion of either the franchise, roadbed, rails or rolling-stock of plaintiff. Unless then it is within the term "roadway" it does not fall within the class to be assessed by the state board. It is very clear that neither the twenty-five-acre tract nor the 2.81-acre tract, known as the "cattle yard," come within that term as we have defined it. We think it also clear that the city blocks, lying immediately north of the street used for roadway purposes, do not fall within that term. They were acquired and are used for local purposes, to accommodate a local demand, and are purely local in the same sense that the buildings constructed thereon are local. The mere fact that improvements such as a passenger station building and a freight building, and convenient spur tracks for the use of the same, all of which might be constructed on the space covered by a right of way, have been constructed thereon, certainly does not make them "roadway." They constitute no part of the continuous strip acquired and used for roadbed purposes. We think it is manifest from the record that the only "roadway" possessed by plaintiff at this place, within the meaning of that term as used in our constitution, was within the limits of the public street known as "Taylor Street."
A different question is presented as to the remaining assessment, which confessedly was for a right of way to be used in the future as a part of the main line of roadway. The fact that plaintiff had not then commenced to use the same as a part of its railroad is, however, a complete answer to plaintiff's claim that it should have been assessed by the *Page 94 
state board. Taking into consideration the object of the constitutional provision invoked by plaintiff, which has already been fully discussed, we are satisfied that it must be construed as applying only to such portions of a road as have in fact been made and are a part of the operated system. Doubtless this was the opinion of both plaintiff and the state board of equalization, for this property was not included in the assessment made by that board for the year 1900. It is urged that the property included in the first three assessments hereinbefore described was in fact included in the assessment made by the state board for the year 1900. That, however, is entirely immaterial here. Not being within the classes of property specified in the constitutional provision, any attempted assessment thereof by such board was, as we have already seen, absolutely void, and did not preclude a valid assessment thereof by the local authorities. There is no other point requiring notice.
The judgment and order are affirmed.
Shaw, J., Sloss, J., McFarland, J., Lorigan, J., and Henshaw, J., concurred.
Rehearing denied.