## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT

### OF

# NORTH DAKOTA

MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, A CORPORATION v. HANS OPPEGARD, SHERIFF OF BARNES COUNTY, AND BARNES COUNTY, NORTH DAKOTA, A PUBLIC CORPORATION.

Opinion filed November 18, 1908.

**Railroads — Taxation — Exemption.**

1. Property used as a telegraph line, built by a railway company, is not exempt from taxation as property reasonably necessary for the running of trains and the transaction of railroad business, when such telegraph property is used for commercial purposes for compensation, paid by patrons.

**Same — Property Subject — Estoppel — Railway Telegraph Lines.**

2. The fact that a railway company is not shown to have a separate franchise or authority to do a telegraph business for compensation is immaterial, where the railway company is shown to have assumed such franchise or authority fully, and is therefore estopped to show, as against the state, that it has no franchise, as a defense to the collection of a tax levied by the state on a franchise, and other property used in the telegraph business.

**Same — "Roadbeds."**

3. A "roadway," within Constitution, section 179, providing for taxation of the franchise, roadway, etc., of all railroads, includes not only the strip of ground on which the main line is constructed, but all grounds necessary for the construction of side tracks, turnouts, connecting tracks, station houses, freight houses, and other accommodations reasonably necessary to accomplish the object of their incorporation.

Appeal from Distrist Court, Barnes county; *Burke, J.*

Action by the Minneapolis, St. Paul & Sault Ste. Marie Railway Company against Hans Oppegard, sheriff of Barnes county, and another. Judgment for defendants, and plaintiff appeals.

Affirmed.

*Lee Combs,* for appellant.

"Roadbed" includes grounds necessary for side tracks, turnouts. station houses, freight houses and all other accommodations to accomplish the objects of railway incorporation. C. M. & St. P. Ry. Co., v. Cass County, et al, 8 N. D. 18, 76, N. W. 239.

Franchises are grants of privileges by the government. Fietsam v. Hay, 3 Am. St. Rep. 493; State v. Western Irr. Co. 19 Pac. 349; Abbott v. Omaha Smithing Co., 4 Neb.. 416; Augusta Bank v. Earle, 13 Pet. 519.

A telegraph line indispensable to railroad operation is a part of the freehold and taxable as such. Am. U. Tel. Co. v. Middleton, 80 N. Y. 408; Badger Lbr. Co. v. Marion Water Supply Co, 15 L. R. A. 652; Hughes v. Lambertville Electric Co. 53 N. J. Eq. 435; Western U. Tel. Co. v. Tennessee, 9 Baxt. 509, 40 Am. Rep. 99; Joy v. St. Louis, 138 U. S. 1; Union Trust Co. v. Weber, 96 Ill. 346.

Property requisite to the exercise of corporate franchise, although used in independent enterprise, is exempt from local or specific taxation. Schuylkill Nav. Co. v. Berks Co. 11 Pa. 202.; People ex rel Seip v. Chgo. Ry. Co. 116 Ill. 181, 4 N. E. 480; C. M. & St. P. Ry Co. v. Bayfield County, 58 N. W. 245; S. E. L. & P. Co. v. Philadelphia, 191 Pa. 170; Tillery v. H. & St. Jo. Ry. Co. 97 Mo. 348; State Penn. B. Co. v. Jersey City, 49 N. J. L. 540; C. M. & St. P. Ry. Co. v. Houston Co., 38 N. W. 619; Detroit Union R. Co. v. City, 50 N. W. 302; Carondolet Canal Nav. Co. v. New Orleans, 44 La. Ann. 394; Columbia & P. S. R. Co. v. Chilberg, 34 Pac. 163; McHenry v. Alford, 168 U. S. 651; Vicksburg Bank v. Warrell, 67 Miss. 47; Louisville Tob. Warehouse Co. v. Commonwealth, 57 L. R. A. 33; Jones on Telegraph and Telephone Companies, Sec. 148; Adams v. Ry. Co., 13 So. 932; C. M. & St. P. Ry. Co. v. Supervisors of Crawford Co. 5 N. W. 3.

*Alfred Zuger* and *Theodore S. Lindland,* for respondent.

Railroads and telegraph lines are personal property. M. St. P. & S. Ste. M. Ry. Co. v. Dickey Co., 11 N. D. 107, 90 N. W. 260 ; C. M. & St. P. Ry. Co. v. Cass Co., 8 N. D. 18, 76 N. W. 239 ; Rev. Codes, 1905, Secs. 1629 and 1536.

Only corporate property in actual use in corporate operations is exempt from taxation. See Rules in Louisville Tob. Warehouse. Co. v. Commonwealth, 57 L. R. A. 33.

MORGAN, C. J.   During the years 1901 to 1904, inclusive, the State Board of Equalization assessed certain taxes against the plaintiff, upon property owned and used by it in maintaining a telegraph line along and upon its right of way, and extending wherever its right of way and roadbed extends within the state. The assessment was made at a specified sum per mile upon the franchise, and a specified sum per mile upon the other property of the plaintiff within the state. The assessment was not made, nor was the levy of the taxes made, directly upon the property, as the property of the plaintiff, but was assessed and levied under various designations as to the ownership of the property, such as "Soo Telegraph Company," "Minneapolis, St. Paul & S. Ste. Marie Telegraph Company," and "Operated and controlled by the Minneapolis, St. Paul & S. Ste. Marie Ry. Co., as the commercial department of said company." The plaintiff company refused to pay the taxes so assessed, claiming that the property taxed was a part of the roadway of its railway, and included within the tax levied upon its railway property and paid by it during the years in question. The taxes so levied upon the so-called telegraph system of the Soo Railway Company, was certified to the auditor of Barnes county by the State Auditor, and was by the auditor of said county extended upon the tax rolls of the county. Upon the refusal of the plaintiff to pay these taxes, the sheriff levied upon certain property of the plaintiff under a tax warrant, and advertised the same for sale to pay said taxes. The plaintiff paid the full amount of the taxes to the sheriff under protest, and brings this action against the county to recover back the money so paid, with costs. The jury found in favor of the defendant county, and judgment was rendered upon the verdict by the district court. The plaintiff has appealed from the judgment.

The plaintiff contends that the telegraph line was constructed, and during the years in question was used, as an indispensable means

of operating its railway system and performing its duties as a common carrier. There are certain undisputed facts in the record which should now be enumerated. The property which was assessed belonged to the plaintiff company. Plaintiff company is not shown to have a charter or franchise to carry on a telegraph business. The only charter it has is as a railroad company, so far as is shown by the record. The company operates a railway line across the state from southeast to northwest, and a line across the state, or nearly so, from east to west, and numerous branch lines, and maintains a telegraph line wherever it has a railway line. It does all the commercial business that is offered to it at every public place along its railway line, and at one place at least, maintains an office for taking care of commercial business alone. It will not be disputed that a telegraph line, used exclusively for the moving of trains and the dispatching of railroad business, is not assessable independently or separately from the railroad property. In C. M. & St. P. Ry. Co. v. Cass County, 8 N. D. 18, 76 N. W. 239, the rule as to taxation of property owned by a railway company, and included as part of the "roadway," as that term is used in section 179 of the Constitution, was laid down to the effect that the word "roadway" includes, "not only the strip of ground upon which the main line is constructed, but all grounds necessary for the construction of side tracks, turnouts, connecting tracts, station houses, freighthouses and all other accommodations reasonably necessary to accomplish the object of their incorporation." The appellant contends that under this rule the property taxed in this case is exempt from separate taxation. It contends that the property is reasonably necessary for the operation of its railway. If the fact that the telegraph line is used for profit in handling commercial business could be eliminated from the case, this contention could be upheld as based upon reason and authority. While the business of a railroad company and the running of its trains require a telegraph line and equipment, and the same are reasonably necessary for these purposes, it is nevertheless a self-evident fact that it is not necessary for the railroad company to do commercial business for compensation in order to run its trains. What is the effect upon the taxability of this telegraph property that it has not been used exclusively for railroad business? The evidence is not satisfactory as to the amount of commercial business that is done by the telegraph department of the plaintiff company. By way of general conclusions it is stated by the officers of the

company that the volume of commercial business was small, during these years, as compared with the business of running the trains and doing the other railroad business. No facts were given in evidence on which a conclusion could be formed as to the relative amount or volume of work required to perform the two classes of business. The court will take judicial notice of the fact that the railroad runs through portions of the state that are thickly populated, and that there are many villages and cities on this road, and that, so far as population is concerned, the territory traversed by the plaintiff road is practically the same as the territory traversed by the railway lines operated through the Western Union Telegraph system. We do not think it material that the revenue from the telegraph business is not definitely given. The evidence will sustain a finding that the revenue derived from the use of the telegraph line for other than railway business is sufficiently large to warrant the conclusion that such telegraph property is not used as reasonably necessary to carry out the object of the incorporation of the plaintiff as a railroad corporation. It is true, as stated before, that a telegraph system is necessary to operate a railroad, and to run its trains in a safe and orderly manner, but it does not appear to be shown or claimed that it was necessary for the plaintiff company to build its own telegraph system, and from what other railroads are doing in that regard such a contention could not be sustained. The fact, therefore, that the ownership of the telegraph line by the railroad company was not necessary, and such ownership not indispensable to it for operating its railway system, does not exempt the telegraph property from taxation as a part of the railroad property, and the fact that the railroad company had paid its taxes for these years on its roadbed, right of way, rolling stock, and other railway property becomes immaterial. The property used for the construction and maintenance of the telegraph line was not included in the property of the railroad company taxed by the board of equalization. The use of the property in running a telegraph system for compensation cannot be said to be reasonably necessary to carry out the purposes for which the railroad company was formed. The following cases are in point as sustaining the taxation of property under similar circumstances: C. M. & St. P. Ry. Co. v. Board of Supervisors, 48 Wis. 666, 5 N. W. 3; M. & St. P. Ry. Co. v. City of Milwaukee, 34 Wis. 271; C. M. & St. P. Ry. Co. v. Crawford Co., 29 Wis. 116.

In the year 1900 an amendment to the Constitution of the state was adopted, and under this amendment the board of equalization was empowered to assess "the franchise * * * and all other property of all telegraph or telephone companies, or corporations operated in this state and used directly or indirectly in the carrying of * * * messages." Pursuant to this amendment the Legislature passed chapter 26, p. 30, Laws 1901. Under this chapter it is provided that the State Board of Equalization "shall * * * in each year assess at its actual value the franchise and all other property within the state, of all * * * telegraph or telephone companies." The evidence in this case does not show that the plaintiff company was ever granted a charter or articles of incorporation or any express authority or franchise to carry on business as a telegraph company. The complaint alleges that the plaintiff is a duly incorporated company engaged in operating a railway in North Dakota. It is duly authorized to operate a railroad only, so far as this record shows. It is shown that, as such railway company, it has built, and now maintains and operates, a complete telegraph system, and operates the same for the accommodation of the public for compensation, in addition to using such telegraph equipment in directing the running of its trains and doing a purely railroad business. It is shown, as we have seen, that the company has carried on a telegraph business for compensation as fully as though it had a separate franchise or authority to do such telegraph business. The plaintiff does a general telegraph business to the same extent as a company expressly and solely authorized to do such business. The question is therefore presented whether the fact that plaintiff is not shown to be authorized by sovereign authority to do a telegraph business is a defense available to it to defeat the levy and collection of a tax upon its telegraph property by the State Board of Equalization, pursuant to said chapter 26, p. 30, Laws 1901. If the word "franchise" is to be taken as meaning simply a direct authority from the state to do business, then the record does not show that it possessed any authority to do a telegraph business independently of operating its railroad. The record fails to show that a franchise or right to carry on a telegraph business, for or upon the plaintiff's railway line, was ever granted to any company or corporation. The plaintiff claims that this fact is fatal to the tax. The defendant claims that plaintiff should not be permitted to interpose that fact as a defense, nor as a fact in an affirmative cause of action to recover

back the money paid on account of said taxes. We think that the
defendant's contention should be sustained. The plaintiff is an in-
corporated railroad company carrying on a distinct telegraph bus-
iness in connection with its railroad business. The state has not
objected or taken any steps to prevent the plaintiff from carrying
on a business for compensation not directly connected with the busi-
ness of a strictly railroad company. The carrying on of a telegraph
business for compensation is not included within the duties or privi-
leges of a company organized for railroad purposes. A company
chartered to do a railway business has no authority, by virtue of such
charter, to maintain a telegraph line independently of its railroad
business. In Railroad Company v. Telegraph Company, 38 Ohio St.
24, the court said: " Another view of the case leads to the same
result. Neither the Marietta & Cincinnati Railroad Company, nor the
plaintiff in error, ever had or have the capacity to engage in the
telegraph business for the public generally, whether local or gen-
eral in its character. The only extent to which either of them could
engage in the business of telegraphy was such as might be necessary
or convenient to the management of the railroad for its business.
For this purpose only can a railroad company in this state erect and
maintain a line of telegraph poles and wires. True, having built
such lines for such use, it is competent for the railroad company to.
grant to another, having such capacity to engage in the business,
the right to use such poles and wires for the purpose of general
telegraphy, and the right so transferable may be exclusive or partial
as the parties may agree." The plaintiff has reaped the full benefit
to be derived from operating a telegraph line, and the state has, by
its inaction, impliedly assented thereto. The plaintiff, having carried
on a general telegraph business in connection with its railroad
business, cannot be heard to now say it had no franchise or authority
to do a telegraph business, for the purpose of defeating a tax levied
upon its property that was used independently of any railroad bus-
iness, and so used for compensation. The actual existence of a
franchise from the state becomes immaterial, inasmuch as the plain-
tiff has actually assumed one. To permit it to defeat a tax now, on
the ground that it has no franchise, or authority, as a matter of fact,
to do a telegraph business, would be permitting it to take advantage
of its own wrong. The company will not now be heard to assert
the fact that it had no authority to do a telegraph business. The
company is estopped from showing such fact by reason of having

assumed and asserted that authority. The tax will be upheld, not as levied upon an actual or assumed franchise, but upon the ground that the plaintiff has estopped itself from asserting that it had no franchise. Adams Express Co. v. Kentucky, 166 U. S. 171, 17 Sup. Ct. 527, 41 L. Ed. 960.

The judgment is affirmed. All concur.