NORTHERN PACIFIC RY. CO., RESPONDENT, *v.* BROGAN,
COUNTY TREASURER, APPELLANT.

(No. 3,886.)

(Submitted May 29, 1916.  Decided June 30, 1916.)

[158 Pac. 820.]

*Taxation—Railroads—Telegraph Lines—By Whom Assessable—
Constitutional Law—Legislative Construction.*

Taxation—Railroads—Telegraph Lines—By Whom Assessable.
  1.  So much of a telegraph line used exclusively for railroad purposes
  and extending along the right of way across the state, as is within any
  given county is assessable by its assessor, and not by the state board
  of equalization as part of the "roadway," under the mandate of sec-
  tion 16, Article XII, Constitution, that term including only the bare
  strip of ground upon which the rails are laid.
Constitutional Law—Legislative Construction.
  2.  While the legislative construction of a constitutional provision is
  not conclusive, it is entitled to the most respectful consideration, par-
  ticularly when it has been uniform and has extended over a consider-
  able period of time, unchallenged in the courts.

*Appeal from District Court, Granite County; Geo. B. Win-
ston, Judge.*

ACTION by the Northern Pacific Railway Company against
T. N. Brogan as treasurer of Granite County.  From a judg-
ment for plaintiff, defendant appeals.  Reversed and remanded.

Cause submitted on briefs of Counsel.

*Mr. J. B. Poindexter,* Attorney General, and *Mr. Wm. H.
Poorman,* Assistant Attorney General, for Appellant.

*Messrs. Gunn & Rasch,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

At 12 o'clock noon of the first Monday of March, 1915, the
Northern Pacific Railway Company, owned and operated a

---

For authorities passing on the question of effect of different modes of
assessment and procedure in taxation of corporations, see note in 60
L. R. A. 372.

telegraph line situated on and along its right of way across this state and extending through Granite county. Such telegraph line was an entity; was used exclusively for railroad purposes, and was a necessary adjunct to the secure and successful operation of the railroad. The county assessor of Granite county listed for assessment and taxation so much of the telegraph line as is within his county; the taxes were levied and extended, were paid under protest, and this action brought to recover back the amount. To the complaint, which sets forth the facts fully, a demurrer was interposed and overruled, and the defendant, refusing to answer further, suffered judgment to be entered against him, and appealed.

The case presents for determination the single question: Should so much of the telegraph line as is within Granite county [1] be assessed by the local assessor, or should the entire line be assessed by the state board of equalization as a part of the roadway of the railway company? The answer is to be found in the proper construction of the language of section 16, Article XII, of our state Constitution, to-wit: "All property shall be assessed in the manner prescribed by law except as is otherwise provided in this Constitution. The franchise, roadway, road-bed, rails, and rolling stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization and the same shall be apportioned to the counties, cities, towns, townships, and school districts in which such railroads are located, in proportion to the number of miles of railway laid in such counties, cities, towns, townships, and school districts."

At the time the Constitution was adopted, our revenue laws were found in Chapter 100, Fifth Division, Compiled Statutes of 1887 (secs. 1665–1795). For the purpose of taxation all railroad property was then divided into two classes. It was made the duty of the territorial board of equalization "to assess all the property in this territory belonging to railway corporations, except lots or parcels of real estate owned by the road in each county and improvements thereon, and except depots,

machine-shops, and other improved property connected with such road and located in any county, which shall be taxed in the county where situate." (Sec. 1675.) The same section provided further that in making its assessment the board "shall include the right of way, roadbed, bridges, culverts, rolling stock, and all other property exclusively used in the operation of such railway." Under these provisions it was the general rule that "railroad property" should be assessed by the territorial board of equalization, and it was the exception to that rule that certain enumerated property of a railroad company should be assessed by the county assessor. For reasons best known to themselves, the framers of our Constitution reversed this order and established the general rule that property shall be assessed locally, and the exception thereto that certain enumerated property shall be assessed by the state board of equalization. If it had been intended that all property of a rail-· road company operating in more than one county and necessary to the successful operation of its railroad should be assessed by the state board, and only its property which had a peculiarly local value should be assessed by the county assessor, no purpose could have been subserved in facing about upon the general plan which had been in force many years when the constitutional convention assembled. The very fact that the plan was completely reversed is most persuasive evidence of an intention to confine the state board to the assessment of only such property as was specifically enumerated without enlarging the meaning of the terms employed in the designation of such property.

The terms of section 16 above are mandatory and prohibitory. They are not to be contracted on the one hand nor expanded on the other. To express the intention of the framers of our Constitution would be to solve the difficulty before us. The debates of our constitutional convention are not available, and the meaning intended to be conveyed by the term "roadway," as employed in the section above, must be sought elsewhere. While a legislative construction of a constitutional provision [2] is not conclusive, it is entitled to the most respectful con-

sideration, particularly when it has been uniform and has extended over a considerable period of time, unchallenged in the courts. (*Northern Pac. Ry. Co.* v. *Mjelde,* 48 Mont. 287, 137 Pac. 386.)

It is a part of the history of this commonwealth that the first state legislative assembly failed to organize or to enact any statutes; but the first opportunity which presented itself after the Constitution was adopted was seized upon to declare a legislative policy respecting the assessment of railroad property, and to that extent to interpret the language of section 16, Article XII. The second legislative assembly enacted an entirely new revenue measure. (Laws 1891, p. 73.) Section 11 of that Act provided: "The franchise, roadway, roadbed, rails and rolling stock of all railroads operating in more than one county in this state must be assessed by the state board of equalization, as hereinafter provided for."

Section 12: "All other taxable property must be assessed in the county, city, or district in which it is situated." By section 14 the county assessor was authorized to require from a railroad company, having property within his county, a list of "all depots, shops, station grounds, buildings, and other structures erected on the space covered by the right of way, and all other property owned by any person, corporation, or association of persons owning or operating any railroad within the county." Section 43 enumerated the items of information which a railroad company, operating in more than one. county, was required to furnish to the state board of equalization. Section 44 provided for the annual meeting of the board, and then proceeded: "At such meeting the board must assess the franchise, roadway, roadbed, rails, and rolling stock of all railroads operated in more than one county. All rolling stock, whether owned, leased, or conveyed, carrying passengers or freight, shall be assessed in the name of and against the company or corporation, leasing, using, or conveying such rolling stock. Assessment must be made to the corporation, person, or association of persons owning or leasing the same, and must be made upon

the entire railroad within the state, and must include the right of way, bridges, and culverts of the railroad.   The depots, stations, shops, and buildings erected upon the space covered by the right of way, and all other property, owned or leased by such person, corporation, or association, except as above provided, are assessed by the assessor of the county wherein they are situate.''

If the legislature correctly interpreted the language of section 16, above, the term ''roadway'' as used therein is synonymous with ''right of way'' when used to designate the bare strip of ground upon which the roadbed, rails and other necessary appliances of the road are laid or erected, and not as including any of the improvements upon or annexed to that strip.   And that construction given in 1891, substantially contemporaneous with the initial application of the provisions of the Constitution to existing conditions, has never been abandoned or departed from.   The terms of the Act of 1891, to which reference has been made, continued in force, were carried into the Codes of 1895 (Chap. 3, Tit. XII, Part III, Pol. Code), and are now found in the Revised Codes, sections 2502–2562.

For twenty-five years continuously, section 16, Article XII, has been construed to mean that only the naked roadway, with the franchise, roadbed, rails and rolling stock of a railroad operating in more than one county, may be assessed by the state board, while all other railroad property is subject to the general rule which provides for local assessment.   If this long-continued and oft-reiterated policy has ever been challenged before the institution of this action, it has not been called to our attention, and, in the absence of such attack, the uniform construction given by a co-ordinate branch of government, throughout substantially the entire life of the state, is entitled to the most respectful consideration by this court.

As heretofore observed, this controversy hinges upon the proper scope of the meaning attached to the term *''roadway,''* as employed in the Constitution above.   Each of the other terms—franchise, roadbed, rails and rolling stock—has a well-

defined and well-understood meaning, and there is not any contention made that any one of them is sufficiently broad to include this telegraph line; but if we understand the position assumed by the respondent railway company, it is that the framers of our Constitution, in drafting section 16 above, employed the term "roadway" as synonymous with "right of way" in the broad sense as including not alone the strip of ground upon which the tracks, depots, shops and other improvements are situated, but as well such improvements upon that strip of land, or annexed thereto, as constitute a unit or one continuous property extending into or through more than one county and necessary to the use of, and actually used exclusively for, railroad business.   There is also the argument advanced that the constitutional convention must have intended  that property situate in more than one county which might fairly be considered as of substantially the same character and value throughout the entire extent, and therefore capable of assessment upon a mileage basis, should be assessed by the state board of equalization, and that the local assessor should be confined to the assessment of such property only as has a peculiarly local value.   To the support of these contentions reference is made to certain decided cases:

In *Northern Pac. R. R. Co.* v. *Carland,* 5 Mont. 146, 3 Pac. 134, it was held that the term "right of way" as used in the Act granting aid to the Northern Pacific Railroad Company (Act July 2, 1864, Chap. 217, 13 Stats. at Large, 367), included property used in constructing and operating the road and which had become annexed to the soil and a part of it, as well as the bare strip of land upon which the road was to be laid, and the same rule was observed in *Territory of New Mexico* v. *United States Trust Co.,* 172 U. S. 171, 43 L. Ed. 407, 19 Sup. Ct. Rep. 128.   Assuming the correctness of the conclusion reached in each of these cases, it does not follow that the same meaning should be attached to the term "roadway" used in our Constitution.

In *Chicago, M. & St. P. Ry. Co.* v. *Cass County,* 8 N. D. 18, 76 N. W. 239, the court held that the term "roadway," used in the Constitution of North Dakota in the same connection as it is used in section 16 above, is synonymous with "right of way," and includes not only the strip of ground upon which the main line track is laid, but also the ground used for station purposes, for roundhouse, shops, sidings, spur tracks "and all other accommodations reasonably necessary to accomplish the object" of the railroad. Whether the observation of the court quoted above was pertinent to the question for decision is involved in doubt; but, acting upon it as authoritative, the same court, in *Minneapolis, St. P. & S. S. M. Ry. Co.* v. *Oppegard,* 18 N. D. 1, 118 N. W. 830, said: "It will not be disputed that a telegraph line, used exclusively for the moving of trains and the dispatching of railroad business, is not assessable independently or separately from the railroad property." Whatever this means, it is clearly *dictum,* for the property in controversy there was held to be used for commercial as well as for railroad purposes and to be assessable separately.

In *San Francisco etc. R. R. Co.* v. *Stockton,* 149 Cal. 83, 84 Pac. 771, the court was called upon to determine the meaning of the term "roadway" used in the Constitution of California in the same connection as the like term is used in our section 16 above, but with reference to parcels of land of considerable extent used for freight warehouse, roundhouse and stockyard purposes. The California court referred to the *Cass County Case* above, but declined to follow the North Dakota court, and gave to the term "roadway" a much narrower meaning. In the course of the opinion, it is said that the purpose of the constitutional convention in making an exception to the general rule of local taxation and conferring upon the state board of equalization the authority to assess certain railroad property "was to provide a more uniform and just method of valuing for taxation purposes what was designated by one of the members of the constitutional convention as the 'continuous property' of such railroads, the property which might fairly be con-

sidered as being substantially the same, both in quantity and in value, the whole length of the road and therefore capable of being valued at so much a mile."

With all due respect to these authorities, we are unable to follow them to the limits they have set or apply the doctrines which they enunciate to the facts of this case.

1. That the framers of our Constitution did not employ "roadway" as synonymous with "right of way," as that term was used in the railroad land grants, seems reasonably certain. If they had intended so broad a meaning, their use of the words "roadbed" and "rails" was purposeless, for each is a part of the right of way in the sense in which "right of way" is used in the congressional grants. From the very fact that they did thus particularize, we are led to believe that "roadway" was employed to designate the naked land used for right of way purposes. This appears to be the meaning given to the term when employed in the same connection, by the supreme court of California in *Railway Co.* v. *Stockton,* above, and by the supreme court of the United States in *Santa Clara Co.* v. *Southern Pac. Ry. Co.,* 118 U. S. 394, 30 L. Ed. 118, 6 Sup. Ct. Rep. 1132.

2. That the character of the property as necessary to the operation of the road was not a determining factor with the framers of our Constitution, in parceling out railroad property for the purpose of assessment, seems equally clear. It will scarcely be contended at this late day that depots, roundhouses, shops, coal-chutes, and the like property form a part of the roadway and are to be deemed included in the assessment made by the state board; and yet they are necessary—doubtless indispensable—accessories to the successful operation of a railroad. Not one of the terms employed in section 16 above is susceptible of a definition broad enough to include all the necessaries of a railroad.

3. Neither did the framers of our Constitution consider as a determining factor the character of the property as a continuous whole of like value throughout its extent and capable of

fair valuation on a per mileage basis.  If they had, other property would have been included in the class assessable by the state board.

It is a part of our history that long before the advent of the railroad into the territory of Montana, and more than twenty years before the constitutional convention assembled, the Western Union Telegraph Company was operating lines of telegraph through more than one county, and that, when the Constitution was written, the telegraph was a common means of communication between the different sections of the territory, and, though the telegraph lines are peculiarly that character of property to which the per mileage basis of assessment is applicable, no attempt was made to clothe the state board of equalization with the power or authority to assess such property, although at that time it was assessed upon a mileage basis exclusively. (Sec. 1675, Fifth Division, Comp. Stats. 1887.)

The Act of 1891 established a legislative policy which has been followed since.  Section 30 provided: "Telegraph, telephone, and electric light lines, and similar improvements, and the franchises, and canals, ditches and flumes must be listed and assessed in the county in which such property is located." In section 29 of the same Act the legislative assembly took cognizance of the fact that a street railway might operate in more than one county, and made provision for the assessment of such property by the county assessors.  These provisions have likewise continued in force to the present time.  (Sec. 3718, Pol. Code 1895; sec. 2528, Rev. Codes.)

The association of the words "roadway," "roadbed," and "rolling stock"; the construction given them by the legislature throughout all the years since 1891 and unchallenged so far as we are advised; the exclusion from the class of property, assessable by the state board, of other property of the like character as that now under consideration; the change made in the policy which was pursued when the constitutional convention assembled, and the application of the rule of construction provided by the Constitution itself lead us to the conclusion that the

term "roadway," employed in section 16 above, does not include the telegraph line in question; that the assessment made by the assessor of Granite county was lawful, and the tax levied in pursuance thereof valid.

The judgment is reversed and the cause remanded, with directions to dismiss the action.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.