## NORTHERN PACIFIC RAILWAY COMPANY v. MORTON COUNTY, a Municipal Corporation.

(L.R.A.—, —, 156 N. W. 226.)

Under constitutional and statutory provisions governing taxation of sites of elevators, lumber yards, and oil-tank stations upon railroad right of way occupied under license of lease from the railroad company, it is *held:*

Taxation of elevator sites — lumber yards — oil-tank stations upon railroad right of way — constitutional and statutory provisions — industrial sites — private uses — real estate.

1. Such sites are industrial sites while so held and used, and as such are

devoted to private, and not railroad, use, and are therefore taxable as local real estate.

**Tracts — railroad right of user — subject to — assessment as real estate.**

2. While the tracts occupied by such sites are subject to the railroad right of user, and are taxable as a part of and in the manner of taxing of strictly railroad property, yet the tax therefor assessed by the state board of equalization upon such basis cannot constitute a tax upon the taxable private right of user enjoyed by the industrial sites, and which sites for such purposes can be assessed and taxed only after local assessment as real estate.

**Industrial sites — taxation of — locally.**

3. It is *held*, therefore, said industrial sites have escaped taxation during the years in question, and were taxable locally during said time.

**Dual taxable right of user — assessment — state board of equalization — general taxation — private use.**

4. The 1901 constitutional amendment to § 179 of the Constitution for taxation purposes recognizes a dual taxable right of user of right of way, *viz.*, (1) a right to tax the same upon the assessment of the state board of equalization as for railroad use; and (2) the right to locally tax by general taxation any portion of the site appropriated temporarily to private use.

**Private right of user — constitutional amendment — assessment of property — for taxation.**

5. Section 2118, Comp. Laws 1913, taken with said constitutional amendment, authorizes the assessment made upon the private right of user of these industrial sites.

**Taxation — both rights of user — not double taxation.**

6. This taxation of both rights of user does not constitute double taxation.

**Industrial sites — assessment — levies — liens.**

7. The taxes assessed and levied upon all these industrial sites are valid and constitute liens upon the tracts in question.

Opinion filed December 13, 1915.   Rehearing denied February 5, 1916.

Cross Appeals from the District Court of Morton County, *Nuessle, Special Judge.*

Modified and affirmed.

*Watson & Young,* for plaintiff and for the Elevator Company, and *Miller, Zuger, & Tollotson,* for the Lumber Yard and Oil Sites.

A contemporaneous and practical construction of either a constitution or a statute is entitled to great, if not controlling, weight.   Cooley,

Const. Lim. 4th ed. pp. 81–86; Gaar-S. & Co. v. Sorum, 11 N. D. 164, 90 N. W. 799; Wiles v. McIntosh County, 10 N. D. 594, 88 N. W. 710; Northern P. R. Co. v. Barnes, 2 N. D. 310, 51 N. W. 386; Barrett v. Stutsman County, 4 N. D. 175, 59 N. W. 964; State ex rel. Edgerly v. Currie, 3 N. D. 310, 55 N. W. 858; State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360.

The assessment now proposed would constitute double taxation, and in a case where there is nothing either in the Constitution or the statutes which would authorize it. Cooley, Taxn. 1st ed. 165, 166.

Railway right of way or station grounds temporarily occupied do not cease to be railroad property devoted to public use. The mere fact that they are so used for platforms, yards, warehouses, and buildings, though these may serve the convenience of others, does not change this rule. York & M. Line R. Co. v. Winans, 17 How. 30, 39, 15 L. ed. 27, 29; Beman v. Rufford, 1 Sim. N. S. 550, 20 L. J. Ch. N. S. 537, 15 Jur. 914; Winch v. Birkenhead, L. & C. J. R. Co. 13 Eng. L. & Eq. Rep. 506; Gue v. Tide Water Canal Co. 24 How. 257, 16 L. ed. 635; East Alabama R. Co. v. Doe, 114 U. S. 340, 29 L. ed. 136, 5 Sup. Ct. Rep. 869; Thomas v. West Jersey R. Co. 101 U. S. 71, 83, 25 L. ed. 950, 952; Hartford F. Ins. Co. v. Chicago, M. & St. P. R. Co. 175 U. S. 91, 99, 44 L. ed. 84, 88, 20 Sup. Ct. Rep. 33; Grand Trunk R. Co. v. Richardson, 91 U. S. 454, 468, 23 L. ed. 356, 361; Gurney v. Minneapolis Union Elevator Co. 63 Minn. 70, 30 L.R.A. 534, 65 N. W. 136; Const. § 179; Chicago, M. & St. P. R. Co. v. Cass County, 8 N. D. 18, 76 N. W. 239.

A "roadway" within the Constitution, providing for taxation of the franchise, roadway, etc., includes not only the strip of land on which the main line is constructed, but all grounds necessary for the construction of side tracks, turnouts, freight houses, connecting tracks, station houses, and other accommodations reasonably necessary to accomplish the object of their incorporation. Minneapolis, St. P. & S. Ste. M. R. Co. v. Oppegard, 18 N. D. 1, 118 N. W. 830; Chicago, M. & St. P. R. Co. v. Cass County, 8 N. D. 18, 76 N. W. 239; Minneapolis, St. P. & S. Ste. M. R. Co. v. Dickey County, 11 N. D. 107, 9 N. W. 260; Laws 1891, chap. 126; State ex rel. Stoeser v. Brass, 2 N. D. 482, 52 N. W. 408, 153 U. S. 391, 38 L. ed. 757, 4 Inters. Com. Rep. 670, 14 Sup. Ct. Rep. 857; Gurney v. Minneapolis Union Elevator Co. 63

Minn. 70, 30 L.R.A. 534, 65 N. W. 136; Roby v. New York C. & H. R. R. Co. 142 N. Y. 176, 36 N. E. 1053; Peirce v. Boston & L. R. Corp. 141 Mass. 481, 6 N. E. 96; Grand Trunk R. Co. v. Richardson, 91 U. S. 454, 23 L. ed. 356; Illinois C. R. Co. v. Wathen, 17 Ill. App. 582; Minneapolis, St. P. & S. Ste. M. R. Co. v. Douglas County, 159 Wis. 408, 150 N. W. 422; State ex rel. Milwaukee Street R. Co. v. Anderson, 90 Wis. 550, 63 N. W. 746; Washburn v. Washburn Waterworks Co. 120 Wis. 575, 98 N. W. 539; Chicago & N. W. R. Co. v. State, 128 Wis. 619, 108 N. W. 557; Chicago, St. P. M. & O. R. Co. v. Douglas County, 122 Wis. 273, 99 N .W. 1030; Chicago, St. P. M. & O. R. Co. v. Bayfield County, 87 Wis. 188, 58 N. W. 245; Superior Bd. of Trade v. Great Northern R. Co. 1 Wis. R. C. R. 619.

In states where the "roadway" or the right of way is assessed by a state assessing board, and. other railroad property is assessed by local assessing officers or .boards, it is a matter of some importance to know what is meant by this term. In this state it includes not only the strip of ground on which the main line is located, but also all ground necessary for the construction of side tracks, turnouts, station houses, freight houses, and all other accommodations reasonably necessary to accomplish the objects for which the railroad was incorporated. 2 Elliott, Railroads, §§ 738, 745; State ex rel. Stoeser v. Brass, 2 N. D. 482, 52 N. W. 408, affirmed in 153 U. S. 391, 38 L. ed. 757, 4 Inters. Com. Rep. 670, 14 Sup. Ct. Rep. 857.

Property used in connection with a carrier's business as such is assessable by the state board of equalization, and not by the local authorities. It is held in states having like statutes to ours, that grain elevators and other similar property fall within the designation or railway property used in a carrier's business. Herter v. Chicago, M. & St. P. R. Co. 114 Iowa, 330, 86 N. W. 266; Chicago, St. P. M. & O. R. Co. v. Douglas County, 122 Wis. 273, 99 N. W. 1030; Detroit Union R. Depot & Station Co. v. Detroit, 88 Mich. 347, 50 N. W. 302; State v. Jersey City, — N. J. L. —, 9 Atl. 782; Chicago, M. & St. P. R. Co. v. Crawford County, 48 Wis. 666, 5 N. W. 3; Auditor General v. Flint & P. M. R. Co. 114 Mich. 682, 72 N. W. 992; Chicago, St. P. M. & O. R. Co. v. Bayfield County, 87 Wis. 188, 58 N. W. 245; Board of Equalization v. Louisville & N. R. Co. 139 Ky. 386, 109 S. W. 303; Barhyte v. Shepherd, 35 N. Y. 238.

"It is well settled that assessors, in making assessments in all cases where they have jurisdiction, act judicially." Swift v. Poughkeepsie, 37 N. Y. 511; Barhyte v. Shepherd, 35 N. Y. 238; Buffalo & S. L. R. Co. v. Erie County, 48 N. Y. 105.

"The assessors in determining whether the plaintiff's property was taxable as a dwelling, or exempt as a seminary of learning, act judicially and within the sphere of their duty." Chegaray v. Jenkins, 5 N. Y. 381; Van Rensselaer v. Witbeck, 7 Barb. 133; Central Trust Co. v. Wabash, St. L. & P. R. Co. 27 Fed. 14; Harrington v. Glidden, 179 Mass. 486, 88 Am. St. Rep. 613, 61 N. E. 55, 189 U. S. 255, 47 L. ed. 798, 23 Sup. Ct. Rep. 574; Anniston City Land Co. v. State, 185 Ala. 482, 64 So. 110; 37 Cyc. 1072; Coulter v. Louisville Bridge Co. 114 Ky. 42, 70 S. W. 29; Chicago, St. L. & N. O. R. Co. v. Com. 115 Ky. 278, 72 S. W. 1119.

The action of such officers is conclusive. Coulter v. Louisville Bridge Co. 114 Ky. 42, 70 S. W. 29; Swift v. Poughkeepsie, 37 N. Y. 511; Weaver v. Devendorf, 3 Denio, 117; Vail v. Owen, 19 Barb. 22; Brown v. Smith, 24 Barb. 419; People ex rel. Mygatt v. Chenango County, 11 N. Y. 573; Easton v. Calendar, 11 Wend. 90; Hill v. Sellick, 21 Barb. 207; Fawcett v. Dole, 67 N. H. 168, 29 Atl. 693; Meade v. Haines, 81 Mich. 261, 45 N. W. 836.

The findings of the state board of equalization cannot be impeached collaterally. Yazoo & M. Valley R. Co. v. Adams, 77 Miss. 764, 25 So. 355; Robertson v. Donk Bros. Coal & Coke Co. 238 Ill. 344, 87 N. E. 373; National Docks R. Co. v. State Assessors, 64 N. J. L. 486, 45 Atl. 783.

"The supreme court will not allow a thing to be taxed in specie where it has been taxed already, but under an improper name, since that would be double taxation." Panola County v. Carrier, 92 Miss. 148, 45 So. 426; State ex rel. Pearson v. Louisiana & M. River R. Co. 196 Mo. 523, 94 S. W. 279; Com. v. Maysville & B. S. R. Co. 28 Ky. L. Rep. 1332, 91 S. W. 1139; California v. Central P. R. Co. 127 U. S. 1, 32 L. ed. 150, 2 Inters. Com. Rep. 153, 8 Sup. Ct. Rep. 1073.

*Wm. Langer,* State's Attorney, and *George E. Wallace,* for the State Tax Commission, defendant-appellant.

Local officials have authority to tax industrial sites on railway right of way. "Should any railroad allow any portion of its roadway to be

used for any purpose other than the operation of a railroad thereon, such portion of its roadway, while so used, shall be assessed in the manner provided for the assessment of other real property." Const. art. 4.

Railroad property held under a lease for a term of years, and not taxed as other property, shall be considered for all purposes of taxation as the property of the person so holding the lease. Comp. Laws 1913, § 2118.

If the property is used for railroad purposes or for the operation of a railroad, it is not to be taxed locally; if used for any other purpose, it will be taxed locally. Trustees of Academy v. Bohler, 80 Ga. 159, 7 S. E. 633.

Where corporate property which is assessed only by the central state authorities is rented out for profit, the exemption from local taxation is lost. Illinois C. R. Co. v. People, 119 Ill. 137, 6 N. E. 451; Re Swigert, 119 Ill. 83, 59 Am. Rep. 789, 6 N. E. 469; Farmers' Bank v. Henderson, 7 Ky. L. Rep. 454; St. Louis County v. St. Paul & D. R. Co. 45 Minn. 510, 48 N. W. 334; State ex rel. Hayes v. Hannibal & St. J. R. Co. 135 Mo. 618, 37 S. W. 532; State ex rel. Ziegenhein v. St. Louis & S. F. R. Co. 117 Mo. 1, 22 S. W. 910; State, Camden & A. R. & Transp. Co., Prosecutors, v. Mansfield, 23 N. J. L. 510, 57 Am. Dec. 409; State, New Jersey R. & Transp. Co., Prosecutors, v. Newark, 27 N. J. L. 185, 26 N. J. L. 519; New York Guaranty & Indemnity Co. v. Tacoma R. & Motor Co. 35 C. C. A. 192, 93 Fed. 51; Illinois C. R. Co. v. Irvin, 72 Ill. 452; Pacific Coast R. Co. v. Ramage, 4 Cal. Unrep. 743, 37 Pac. 532; St. Joseph & G. I. R. Co. v. Devereux, 41 Fed. 14; Delaware, L. & W. R. Co. v. Newark, 60 N. J. L. 60, 37 Atl. 629; State v. Baltimore & O. R. Co. 48 Md. 49; Toll-Bridge Co. v. Osborn, 35 Conn. 7; Hennepin County v. St. Paul, M. & M. R. Co. 42 Minn. 238, 44 N. W. 63; Milwaukee & St. P. R. Co. v. Crawford County, 29 Wis. 116; California v. Central P. R. Co. 127 U. S. 1, 32 L. ed. 150, 2 Inters. Com. Rep. 153, 8 Sup. Ct. Rep. 1073; Le Blanc v. Illinois. C. R. Co. 72 Miss. 669, 18 So. 381; Chicago & P. R. Co. v. Hildebrand, 136 Ill. 467, 27 N. E. 69; Todd County v. St. Paul M. & M. R. Co. 38 Minn. 163, 36 N. W. 109; West Chester Gas Co. v. Chester County, 30 Pa. 232; State, New Jersey R. & Transp. Co., Prosecutors, v. Newark, 26 N. J. L. 519; Illinois C. R. Co. v. Irvin, 72 Ill. 452;

Ramsey County v. Chicago, M. & St. P. R. Co. 33 Minn. 537, 24 N. W. 313; Whitcomb v. Ramsey County, 91 Minn. 238, 97 N. W. 879; Delaware & H. Canal Co. v. Wayne County, 15 Pa. 351; Railroad v. Berks County, 6 Pa. 70; Lehigh Coal & Nav. Co. v. Northampton County, 8 Watts & S. 334; Schuylkill Nav. Co. v. Berks County, 11 Pa. 202; Erie County v. Erie & W. Transp. Co. 87 Pa. 434.

If the property is not retained by the corporation (railroad) and used for purposes incident to the proper construction, maintenance, or management of the railroad, or for use by road as a carrier of goods and passengers, it cannot be said to be used for railroad purposes, and will be the subject of local taxation. Delaware L. & W. R. Co. v. Newark, 60 N. J. L. 60, 37 Atl. 629; United New Jersey R. & Canal Co. v. Jersey City, 55 N. J. L. 129, 26 Atl. 135; State, New Jersey R. & Transp. Co., Prosecutors, v. Hancock, 35 N. J. L. 537; State, United New Jersey R. & Canal Co., Prosecutor, v. Jersey City, 57 N. J. L. 563, 31 Atl. 1020; Camden & A. R. Co. v. Atlantic City, 58 N. J. L. 316, 33 Atl. 198; Re Erie R. Co. 65 N. J. L. 609, 48 Atl. 601; Re Erie R. Co. 64 N. J. L. 123, 44 Atl. 976; St. Louis County v. St. Paul & D. R. Co. 45 Minn. 510, 48 N. W. 334; Illinois C. R. Co. v. People, 119 Ill. 137, 6 N. E. 451; Re Swigert, 119 Ill. 83, 59 Am. Rep. 789, 6 N. E. 469; Milwaukee & St. P. R. Co. v. Milwaukee, 34 Wis. 271; Grand Rapids & I. R. Co. v. Grand Rapids, 137 Mich. 587, 100 N. W. 1012, 4 Ann. Cas. 1195; Cook. v. State, 33 N. J. L. 474.

The right of way of a railroad company, or the "roadway" of a railroad company, includes not only the strip of ground necessary for the construction of side tracks, turnouts, connecting tracks, station houses, freight houses, and all other accommodations reasonably necessary to accomplish the object of their incorporation. State v. Baltimore & O. R. Co. 48 Md. 49; Chicago, M. & St. P. R. Co. v. Cass County, 8 N. D. 18, 76 N. W. 239.

A telegraph line on the right of way used by the company for the running of its trains, and also for commercial purposes, is property subject to local taxation. Minneapolis, St. P. & S. Ste. M. R. Co. v. Oppegard, 18 N. D. 1, 118 N. W. 830.

The railroad had no power to enter into the elevator business. The powers of railway companies in this state are defined. Comp. Laws 1913, § 4613; Milwaukee & St. P. R. Co. v. Milwaukee, 34 Wis. 278;

State, New Jersey R. & Transp. Co., Prosecutors, v. Hancock, 33 N. J. L. 315; Illinois C. R. Co. v. People, 119 Ill. 137, 6 N. E. 451; Re Swigert, 119 Ill. 83, 59 Am. Rep. 789, 6 N. E. 469; St. Louis County v. St. Paul & D. R. Co. 45 Minn. 510, 48 N. W. 334; Re Erie R. Co. 65 N. J. L. 608, 48 Atl. 601; Grand Rapids & I. R. Co. v. Grand Rapids, 137 Mich. 594, 100 N. W. 1012, 4 Ann. Cas. 1195.

Elevator companies have the right of eminent domain equal to that of railway companies. Comp. Laws 1913, §§ 3118–3122, 8206.

The state board taxes the franchise, and all that is included in that term. It does not tax the fee. The right of way or "roadway" was taxed as a public use for a railroad; it is now taxed as a public use for and as an elevator. This is not double taxation. West Chester Gas Co. v. Chester County, 30 Pa. 232; 1 Cooley, Taxn. 3d ed. 36, 392, 393 and cases cited in note 2; Pacific Coast R. Co. v. Ramage, 4 Cal. Unrep. 743, 37 Pac. 532.

The railroad exemption is strictly construed. 1 Cooley, Taxn. 3d ed. 365.

The general rule of presumption in favor of the tax holds in the case at bar, and the record of the tax is prima facie proof that the same is correct. Pacific Coast R. Co. v. Ramage, 4 Cal. Unrep. 743, 37 Pac. 532; 1 Cooley, Taxn. 3d ed. 447, and cases cited.

The local taxing officers acted according to the statute. Comp. Laws 1913, §§ 2118, 2127, 2217; Const. § 179, as amended by art. 4.

Goss, J. This is in form an action to quiet title to three tracts of land included within the limits of the right of way of plaintiff company through said county. The object sought is to have declared void a tax levied in 1914 as for property then and prior years omitted from taxation. Three different classes of sites have thus been taxed, viz., an elevator site, a lumber-yard site, and an oil-tank station site. The lumber and oil companies interested have also filed briefs and appear by separate counsel. The case was tried upon stipulated facts. The judgment canceled the lien and the tax as to the elevator site, but upheld the tax and the lien thereof upon the lumber-yard and oil-station sites. Both plaintiff and defendant have appealed. As the tax was levied under direction of the State Tax Commission upon these and all similar sites throughout the state, it champions by brief the cause of the county.

Accepting the statements in the briefs and on argument as true, assessments aggregating $30,000,000 upon a vast amount of taxable property and the validity of the alleged tax thereon is decided by this precedent. This is a case testing the right to tax the sites for 1914 and five prior years of no less than 2,038 licensed elevators, over 1,000 lumber yards and their warehouse sites, and 260 oil-tank station sites upon the right of way of the railroad companies within this state. Decision as to past taxes upon these sites also decides their future taxability. The elevator site involved is the Occident elevator site at New Salem, occupied for the years 1911 to 1914, inclusive, by it as licensee from said railroad company. Against this site as taxable property of the Occident Elevator Company there has been extended as a real estate assessment as property omitted from taxation for said years and upon which assessment as a basis a tax has been levied of $190.73. The lumber yard in question is in New Salem. It is held under a similar license by A. F. Dietz, and has been occupied for the years 1908 to 1914, inclusive, and against which site likewise there has been extended a tax of $53.07, as for property omitted in prior years from taxation. The third is an oil-tank station site upon the company's right of way at Hebron, held under license by the Standard Oil Company, and which it has occupied during 1913 and 1914, and against which for such occupancy there has been extended a tax of $46.31 as for property omitted from taxation. All of said written licenses or leases are in evidence. For the elevator site the lessee pays plaintiff company a stipulated annual rental of $20, "together with all taxes and assessments levied against the premises during the term." The lumber-yard rental is for "the sum of $15, payable annually in advance, together with all taxes and assessments that may be levied against said premises during the continuance of this lease." The oil-tank "lease or license" stipulates for "an annual rental" of "10, annually in advance," and the lessee is to pay all taxes, assessments, license fees or other charges that may be levied or assessed upon said improvements or against the lessor by reason of the use of said premises by the lessee." All said leases or licenses are terminable at will of the railroad company. Certain powers of superintendency of all sites are retained in the plaintiff company, allowing it a certain control to obviate danger of injury and destruction by fire, with indemnity and other provisions, such as that the elevator shall be of at least a

40,000 bushel capacity and a public warehouse business "for public use without discrimination," and "shall have sufficient and proper room to receive and store all grain when it is offered," with the maximum charges stipulated. A right of election to purchase the elevator and appliances at a fair cash value is reserved in the company upon its electing to revoke the lease or license granted the elevator company. Under the stipulated facts, during the years in question, the elevator was used "solely for the purpose of receiving and storing and shipping grain according to the custom and the usage of elevators, and in accordance with the laws of this state, as to all of which the court is asked to take judicial notice; that as a condition for operation said elevator it furnished a bond to the state and paid into the state treasury a license fee of $12 per annum for the privilege of operating." "That in this state the chief industry is grain raising, and that the volume of grain raised for market is so large that has been necessary for this and other railroads to permit the construction and operation of receiving elevators and grain elevators on side tracks on their right of way, which of necessity are located at frequent intervals and adjacent to its tracks; that the great bulk of grain raised and marketed is shipped to Minneapolis, Duluth, and Superior; that a quick market and ample facilities for ready marketing, storage, and shipment are necessary, which is accomplished by the erection and operation of grain elevators located adjacent to railroad tracks; that since statehood, through legislative acts, they have borne the character of public warehouses, and statutes have been enacted and are in force authorizing individuals complying therewith to obtain sites upon railroad right of way for elevator warehouses by condemnation, if necessary." "That plaintiff, without intending to segregate any portion of the land used and set apart for right of way to private individual use, but for the purpose of furnishing proper facilities for marketing and transportation of grain, made the revocable lease in question for the purpose of enabling said elevator company to operate as a public warehouseman, the said grain elevator to receive, store, and ship grain, according to the usage of grain elevators." A similar stipulation as to the lumber yard and oil site is made, and to the effect that the land embraced within its limits was not set apart thereby for private use, but only to furnish proper facilities for the particular business for the convenience of it and the railroad company in the

conduct of their respective business. It was stipulated further "that the said elevator company was assessed by the proper taxing officers, and paid taxes on its elevator building and upon the grain therein which was taxable under the law for each and every year in question," in addition to the license fee for the privilege of operating the elevator. As to the lumber-yard and oil-tank sites it was stipulated "that the tract occupied under said lease or license was a part of plaintiff's right of way, and was assessed by the state board of equalization for the years herein in question, and the taxes so levied and assessed were paid by it; that the oil company was assessed by local taxing officers for its oil tanks and oil and other property used on said site," and that "the local taxing officers assessed and taxed said Dietz for all of his buildings and lumber and other property situated upon the lumber-yard tract, and he paid all of said taxes so assessed for each of said years." That such a tax against the oil company's tanks and property was paid each year. The historical facts concerning the granting by the United States of the original right of way to plaintiff and the purposes for which the same was granted, including therein the reservation by the government of the right to use the same as a post and military road, are stipulated.

Simplified, the questions presented are whether the ordinary, usual, and typical site for the elevator, lumber yard, and oil-tank station, situated upon the railroad right of way of this common carrier so temporarily leased and occupied for such industrial purposes, can be taxed as sites to said industries and as property omitted from prior taxation, and where also the structure, equipment, and property on said sites has been taxed as local personal property during said years, and where, too, at all times the common carrier has also paid a tax levied and apportioned by the state board of equalization against it upon all of the roadway, right of way, franchises, and rolling stock, assessed under constitutional and statutory provisions requiring and authorizing such taxation, and where the portion of its right of way or particular tracts involved in these industrial sites have necessarily been included in such right of way or roadway tax determined upon a per mile basis. The railroad claims that these sites have thus been taxed and consequently cannot be taxed again; that the industries involved have paid their tax as a personal property tax upon their structures; that the sites not having been abandoned to private use are nontaxable property except to it, and

then only as part of its roadway; that in any event the sites are not taxable as property omitted from taxation under statutes authorizing the assessment and taxation of property escaping taxation. The contrary is the claim of the defendant and the Tax Commission representing it. The railroad company also claims that the sites in question have always been devoted to its exclusive use as a common carrier, within constitutional provisions, inasmuch as the sites in question are necessarily used for others at its license as its agents, and directly for railroad use either in the accumulation of or the unloading of railroad freight business, and as such these tracts, even though permitted to be used as sites, have been devoted to a necessary railroad use, and hence are not locally taxable, but instead can only be taxed by the state board of equalization; and therefore that they must have been taxed during the years in question; and are not again subject to taxation, as for property omitted from taxation, or at all.

Determination of whether this property has escaped taxation necessitates consideration of whether it has been taxed. This in turn relates back to the manner in which and the power under which it may have been taxable, and this again goes further back to the use of the property, which is the determining factor as to the manner and the taxing body authorized by the Constitution and statutes to assess and tax. Chicago, M. & St. P. R. Co. v. Cass County, 8 N. D. 18, 76 N. W. 239; Minneapolis, St. P. & S. Ste. M. R. Co. v. Oppegard, 18 N. D. 1, 118 N. W. 830. Taking these questions in inverse order, the character of use of the particular tract under the fact and law applicable will be determined.

As the elevator use as incidental to the railroad use is more closely related thereto, and probably more necessary in fact and public policy, than that of the use made of either of the other two sites, it will first be considered. The trial court found the elevator use to be a railroad use, for purposes of taxation, so far as the site was concerned, and this was not without some support in the authorities, especially among the early cases. The decision of the question depends upon the application of authorities concerning the use to the facts of the use. There is really almost harmony in the law. When the many adjudicated cases are read and considered in the light of the facts in each, certain general principles stand forth, which, taken altogether, announce the law of

this case as well as to distinguish and discriminate precedent. Most of the authority contended for by the appellant has been announced in terminal elevator and kindred cases, the authority concerning which divides according to the use made of the property as to method of taxation. The courts of Wisconsin, Minnesota, Michigan, and other states have held on nearly every phase of the question, and, taken together, their decisions are in harmony, and furnish to a large extent reasoning and precedent upon the instant case. For a few of many illustrative cases consult Chicago, St. P. M. & O. R. Co. v. Douglas County, 122 Wis. 273, 99 N. W. 1030; Minneapolis, St. P. & S. Ste. M. R. Co. v. Douglas County, 159 Wis. 408, 150 N. W. 422; Grand Rapids & I. R. Co. v. Grand Rapids, 137 Mich. 587, 100 N. W. 1012, 4 Ann. Cas. 1195; Chicago, B. & Q. R. Co. v. Rhein, 135 Iowa, 404, 112 N. W. 823; Hennepin County v. St. Paul, M. & M. R. Co. 42 Minn. 238, 44 N. W. 63; Cook v. State, 33 N. J. L. 475; United New Jersey R. & Canal Co. v. Jersey City, 55 N. J. L. 129, 26 Atl. 135; Re Central R. Co. 72 N. J. L. 86, 59 Atl. 1062; People v. International Salt Co. 233 Ill. 223, 84 N. E. 278; Herter v. Chicago, M. & St. P. R. Co. 114 Iowa, 330, 86 N. W. 266. But to revert to the facts: It is stipulated that this elevator is doing the usual and customary elevator business as done in this state, that of receiving for storage, shipment, and marketing of grain at the terminal markets of Minneapolis, Duluth, and Superior. Judicial notice must be taken of the usual conduct of the elevator industry. Many lines of elevators are engaged in this as a business and generally, wherever possible, from the very nature of the business and convenience, it is essential that their houses be situated within a few feet of a side track or spur track, rendering it usual for them to be found situated upon and conducting their elevator businesses upon the railroad right of way close to side tracks. It is generally known that in every city and village the railroad company has for this purpose, and upon its right of way, what is known as its industrial side track, for the convenience of elevator and other industries in loading cars, and for its own in switching them in and out. That all of these industries, whether carried on by old line elevator companies or independent elevators, are operating for profit as an established line of business, buying, screening, mixing, and grading, as well as storing, shipping, and marketing of grain, and this too wholly independent of

the common carriers upon whose right of way they are situated. It is also known, or at least generally supposed, that certain elevator companies in the past have been favored by particular railroads until the legislature has deemed it necessary to enact laws regulative of the warehousing industry, and protecting it against discrimination from the common carrier. One of these laws is that granting a restricted right of eminent domain for obtaining of elevator sites, regardless of the desires of the railway company, thereby placing in the hands of anyone seeking to engage in the elevator industry a right to force the granting of a site by the railroad company for the elevator business. This is mentioned in passing because some of the earlier cases place much emphasis upon the right of the exercise of the right of eminent domain by the railroad companies, and admeasure the use by that right; and perhaps it may have been the application of that principle on trial under which the elevator site was held exempt from taxation. It is a matter well known that a business location, whether for mercantile purposes or for elevator use, possesses a peculiar value incident to the use. This is illustrated by the fact that as between half a dozen or more elevator sites along an industrial railroad side track and upon the right of way, probably no two possess the same advantage as to trade facilities, so that one may be more advantageously situated to procure grain and trade than any of the others, and to that extent may be that much more valuable than the others. Then, again, the elevator situated upon the right of way possesses an advantage in convenience as well as in economy of use, over the elevator, usually an independent one, situated off the right of way, usually because denied a location thereon. In truth the warehouse business has grown beyond the mere accumulating of freight, or from being but an adjunct to the railroad business, into a separate industry of huge proportions. It is no longer necessary, if ever it was so, for any railroad to engage in that industry at primary markets, as one either necessary or reasonably incident to the purpose of its incorporation. The time has long gone by when it was necessary, if that time ever was in fact, for the railroad to build and operate elevators to keep the grain within its territory from being diverted to other carriers and channels of carriage. While such argument may be sound and rest upon facts and necessity as to terminal elevators and connecting transportation facilities for them, it cannot be so as to any elevators in this

state doing the usual local primary elevator business. There is no longer the same relation between the elevator and the railroad that used to be claimed for it and that may be found to-day between the elevator and the flour mill beside of it, engaged in the separate milling industry. In fact if the elevator sites are assessable by the state board of equalization, then flour mills and their storage elevators adjacent thereto and situated in close proximity to a spur track or an industrial track should be assessed likewise, because the flouring industries are also great gatherers of freight for the common carrier. Nor can there be a valid reason, so far as railroad use is concerned, why the fortunately situated elevator, enjoying a favored site by the right of way, should not pay taxes on that site as an industrial site the same as the less favored elevator operating adjacent to the right of way upon individually owned property is taxed upon its side as real estate, in addition to the structures and improvements thereon,—the elevator. Nor is there any reason why the elevator industry should not pay its just proportion of the public burden by taxation, whether situated adjacent to or upon the railroad right of way. No mercantile, banking, lumber and elevator business operated upon private property enjoys a privilege of the kind here urged in the nature of an exemption from the usual method of assessment and taxation. It is difficult to see any basic reason why this elevator site should be assessed differently from any mercantile or other industrial site, simply because of its location being upon railroad right of way.

Nor should the fact, as stipulated, that the tenure of holding has been as licensee or leasehold change the situation. The railroad company holds an easement in or fee to the property for railroad use, and has held the same for that purpose at all times in question, notwithstanding the temporary industrial use permitted of the tract. Such tenancy must be subject to the predominant right of railroad user, as it is doubtful, at least, if the railroad company can, by mere abandonment, forfeit any. right of necessary railroad user. But it can and has permitted another business to hold forth under leasehold upon their property, and the right to the site so used by that other business has been a property right of value. By its occupancy a property right came into existence, and has been possessed and enjoyed by the tenant for years. There is no reason why this right is not as much a property as the structure, buildings,

32 N. D.—41.

and appliances for which the site was a foundation, and which structure thereon under the statutes have been separately taxed as personal property, and thus segregated for taxation purposes from said foundation. So far as the use is concerned, then, this tract has been devoted to an industrial use of a temporary nature, while it was subject to the paramount railroad right of user. This is the effect of the stipulated fact that the railroad has never abandoned it for railroad use so far as its necessities required. But such stipulation does not and cannot negative the character of the use actually made of the site as that of a private industrial use as distinguished from a strictly railroad use, so far as taxation purposes are concerned.

This leads to an examination of the power and method of taxation of the roadbed and right of way with the object of determining whether, under the Constitution and the laws in accordance therewith, this elevator site as used must be taxed as for a railroad use to the exclusion of the exercise of local taxing powers as for private use; and, second, whether in fact the property has been taxed for the uses to which it has been devoted.

Section 179 of the Constitution at statehood provided: "The franchise, roadway, roadbed, rails and rolling stock of all railroads operated in this state shall be assessed by the state board of equalization at their actual value and such assessed valuation shall be apportioned to the counties, cities, towns, townships and districts in which said roads are located as a basis for taxation of such property in proportion to the number of miles of railway laid in such counties, cities, towns, townships and districts." This has been the method of taxing, in the absence of a gross-earnings tax permitted in legislative discretion in lieu thereof by § 176 of the Constitution, which provides that "the legislative assembly may by law provide for the payment of a per centum of the gross earnings of railroad companies, to be paid in lieu of all state, county, township and school taxes on property exclusively used in and about the prosecution of the business of such companies as common carriers, but no real estate of said corporation shall be exempted from taxation *in the same manner and on the same basis* as other real estate is taxed, except roadbed, right of way, shops and buildings *used* exclusively in their business as common carriers." Section 179 has undergone amendment, principally by the addition of these words: "But

should any railroad allow any portion of its roadway to be used for any purpose other than the operation of a railroad thereon, such portion of its roadway while so used shall be assessed in the manner provided for the assessment of other real property." More exact language could not have been used. It is certain to a certain intent in every particular. It leaves nothing for debate, no room for interpretation or construction; and what is more, it is in entire harmony with § 176, while the previously existing section was not, unless it be held that § 176 controlled the original § 179 so far as the exclusive use was concerned; as to which the portion of the roadway occupied for temporary industrial use as in this case, there might arise doubt as to the authority and method to tax independently such right of subordinate user. But the amendment passed in 1901 puts the matter beyond inquiry. This amendment was passed three years after the decision in Chicago, M. & St. P. R. Co. v. Cass County, 8 N. D. 18, 76 N. W. 239, wherein the word "roadway," as used in § 179 of the Constitution, was held to not only include the strip of ground upon which the railroad track was situated, but also the entire right of way at all places in question upon which are situated these sites as subject to necessary railroad use, and taxable in the manner specified, and as exempt from local assessment for general taxation. But that does not exclude or negative the taxing of these sites to the tenants under the amendment of 1901 to § 179, "while so used" "in the manner provided for the assessment of other real property." Sections 176 and 179 of the Constitution exempt railroad right of way from local taxation while "used exclusively in their business as common carriers," but also provides that property so devoted to railroad use shall be assessed and apportioned back to the municipalities by the state board of equalization, with the basis for the taxation of such property being "the proportion to the number of miles of such property within such counties" and municipalities. Not only is right of way through these villages taxable as such for the railroad use, but it is to be proportioned and apportioned upon a basis of mileage in such municipalities. Such is the mandate of the Constitution. Under this direction the state board of equalization would be powerless to assess other than upon a mileage basis as for right of way in its entirety, *i. e.*, without deduction whatever. It is so many miles of railroad roadbed, without reference to its width, except as the same may incidentally enter into the

value placed thereon, and under a mileage basis that must be taken as the basis for assessment by that board. This is important upon the question of whether any deduction could have been made in assessing the right of way for the railroad right of user. Manifestly, no such deduction could have been made in law.

These constitutional provisions recognized that a roadbed of a railroad may be applied to two uses: First, the railroad use in the strict sense of the term for which the railroad must hold its right of way intact as a public carrier to fulfil its duty under its charter and grant of roadway, which must be assessed in its entirety as railroad property devoted to railroad use. Whether it can permanently alienate any portion of the right of way, except in aid of the purposes of its incorporation, it is not necessary to decide. But its holding thereof as right of way presumes a necessity therefor, and also that the same continues impressed with such characteristics herein stipulated not to have been abandoned; and therefore assessable as right of way without deduction, because of temporary use for industrial sites, and upon a per mileage basis by the state board of equalization, and to the exclusion of any other method of assessment for ordinary taxation. And these sections of the Constitution contemplate a second and subordinate right of user under permission and by others; a temporary use, as compared with the permanent railroad use, other than for railroad purposes. Otherwise, the amendment to § 179 was wholly unnecessary. On the contrary, it was adopted after this court had defined the railroad's right of way as covering the entire roadway. It could have been adopted then for only similar purposes to those involved herein.

What has been said as to this elevator site can be no less true as to the lumber-yard and oil-tank site. Neither are the property of the railroad company, nor devoted exclusively to its use, except as merely convenient. As used, neither can be claimed as in any way necessary to the business of railroading. Every argument advanced to place them in the class of railroad property for assessment would apply equally to similar conveniences erected to facilitate any line of merchandising. If the lumber merchant needs to utilize the right of way as a site for the lumber business, likewise the coal man, machinery dealers, and general merchandising should be permitted to place expensive warehouses upon the railroad right of way and claim immunity from usual local taxa-

tion for the site of the business, however valuable it may be to them, identically as has this elevator company, acting by this plaintiff, endeavored to have itself classified as conducting a railroad business, so far as the site is concerned.

That the court of this state in Chicago, M. & St. P. R. Co. v. Cass County, 8 N. D. 18, 76 N. W. 239, declared that "it would indeed be a mistaken policy in our rapidly developing state to curtail any of the agencies which tend to render this (railroad) service efficient," is not, as is urged by the plaintiff, any reason why as a matter of public policy the railroad use should be held to blanket all industries to which it may find it convenient or profitable to lease sites upon its right of way. Assuming that such may have been the policy and construction that then would have been adopted, the amendment to § 179 of the state Constitution in express terms forbids its present application.

The only conclusion is that none of these three sites during the years in questions have been devoted exclusively to railroad use, but instead and on the contrary they have been devoted to a right of user by the railroad for necessary railroad purposes, and also have been permitted by it to be used for a purpose other than the operation of a railroad thereon or for railroad use, i. e., the temporary but constant use of said sites for private industrial purposes.

The next question is whether, throughout this period and while said property was thus used, it was taxable as, for, and upon a basis other than that of railroad user. The necessary conclusion is that it was. While the constitutional provisions referred to have authorized its taxation as a part of the entirety of the roadbed and as upon a per mileage basis, and to that extent these sites have been included in the assessment levied and paid during these years by the railroad as upon its property and for the railroad use, at least since the amendment to § 179, in 1901, while this property was used in a dual capacity the subsidiary right of user of the lessee, his leasehold interest was taxable to him "as the property of the person so holding the same," under §. 2118, Comp. Laws 1913, existing since 1897, it being § 29 of the revenue and taxation act, chapter 126 of the Laws of 1897. Omitting the portions immaterial to this inquiry, its terms are "property held under a lease for a term of years . . . belonging to the state . . . or to any railroad company or corporation whose property is not taxed in the

same manner as other property, shall be considered for all purposes of taxation as the property of the person so holding the same." Thus § 179 of the Constitution, as amended, declares the leasehold interest of this property to be taxable "while so used" and "in the manner provided for the assessment of other real property," while § 2118 declares it to be taxable "as the property of the person so holding the same," the lessee.

Nor can this constitute double taxation as contended by plaintiff. While the property as right of way is taxed to the railroad upon a basis of railroad user by the power authorized to assess for such purposes, it is as against the railroad strictly a railroad tax. But the tax levied for the use made and against the lessee upon the site as for property "not taxed in the same manner as other property" is a tax against the property possessed by the tenant. It is not the same class of tax. Nor is the same property taxed. That the land upon which the right of way is situated and upon which the industrial site thereon is located may give rise to certain separate taxes does not signify that there is necessarily double taxation of it. It is analogous to a real estate tax and real estate mortgage tax, both arising from the same real estate; a corporation tax and a personalty tax upon stock of the corporation; an inheritance tax and a tax upon the property of the inheritance. For a full discussion, see the very able opinion in Harvey Coal & Coke Co. v. Dillon, 59 W. Va. 605, 6 L.R.A.(N.S.) 643, 53 S. E. 928. It should be noted that these licensees are not in the position of the ordinary lessee of real estate, because usually the real estate is taxable "in the same manner as other property." These are licensees of a railroad right of way the lands of which are not taxable "in the same manner as other property."

And again, in the very language of § 2118, Comp. Laws 1913, is found a strong argument for this dual taxation under the facts in this case. This statute is drawn to cover just the situation here found. If it does not here apply, it can never apply to any property of a railroad company while railroad property is expressly mentioned in it, and the legislature must be thus convicted of gross ignorance. That this is so must be the result when it is remembered that only property devoted to railroad use is assessed by the state board of equalization, while other railroad property is assessed locally the same as any other real estate.

And to such properties of a railroad so assessed locally the railroad is taxed in the same manner as any other owner, and hence any power whatever to tax under § 2118 would be excluded by its phraseology, "or to any railroad company whose property is not taxed in the same manner as other property." Therefore, the statute could have been enacted for no other purpose than to cover leasehold interests in right of way of or property permanently devoted to railroad use. The legislature has furnished the machinery as well as classified the property for taxation, and has declared this leasehold right in property to be taxable as real estate, but to the lessees. And this leasehold interest is defined for taxation as real property under § 3, chap. 126, S. L. 1897, § 2076, Comp. Laws 1913, that "real property for the purpose of taxation includes the land itself . . . and all rights and privileges thereto belonging or in anywise appertaining." And under § 2 of said act, § 2075, Comp. Laws 1913, "all real and personal property in this state . . . except such as is hereinafter expressly excepted, is subject to taxation." Leasehold interests are not "expressly excepted" and are therefore taxable.

It is noticeable that the Code of 1895 (an original enactment) did not contain any such provision as is found in § 29 of chap. 126, S. L. 1897, § 2118, Comp. Laws 1913. Sections 1186, 1187 touching the subject do not cover it.

It should also be noticed that chap. 126, S. L. 1897, containing what is now § 2118, Comp. Laws 1913, originated as H. B. No. 3, and the concurrent resolution amending § 179 of the Constitution, becoming the amendment thereto of 1901, originated in the house. It is only a reasonable conclusion that § 2118 and this constitutional amendment were initiated with reference to one another and to cover the situation in this instant case.

The remaining principal question has already been touched upon. It is as to whether these leasehold interests of the sites, being taxable property to the lessees as real estate, have been omitted from taxation during these past years. This must be answered in the affirmative, inasmuch as the railroad has paid only its right of way tax and the lessees but their personal property tax upon the structures upon these sites for same years. That one site may have a greater value than another, according to advantages to be derived from its situation on the

right of way for business purposes other than its dealings with the railroad in the shipping of grain or the unloading of lumber and the like, cannot be doubted. This value peculiar to each site, together with its value of occupancy as a trade site, has been assessed and taxed as property escaping taxation. That this property right has escaped taxation under the stipulated facts, and under the widest contention of the plaintiff and the industries represented in this suit, cannot be successfully disputed. No matter what the extent of the investigation that may have been made by the board of equalization, it was powerless to assess a tax upon this leasehold interest, because under the terms of the constitutional amendment that must necessarily have been assessed as "other real property" is assessed, *i. e.,* by the process of local assessment and a tax spread thereon. The state board of equalization were thus wholly without power in the matter, and any inquiry made by them, which must pertain strictly to the value of the railroad right of way, its franchises, and roadway, are wholly immaterial to and in a field apart from that of the taxation of the leasehold interest of these tenants of the right of way, assessable only by local assessment as ordinary real estate. Thus it is not a matter of classification or values of property, but one instead of entire omission from taxation. As the state board of equalization is without power to assess this property, and the presumption that official duty has been properly performed applies, it must be presumed that said board not even considered the value of these leases in its valuation of the railroad right of way for railway use. It must be presumed to have performed its duty, instead of the contrary.

Nor has the question of state control of elevators as public warehousemen anything to do with the declared manner of taxation under constitutional and statutory provisions. All these lines of business are of great benefit, and are to be encouraged, but nevertheless they are under state control as to regulation of business and also as to method, manner, and means of taxation. That they are beneficial does not signify that they should not contribute their just share of taxation for the privileges enjoyed. And the tax, while great in the aggregate as to all sites as to which this decision will furnish precedent, is but comparatively trivial as to each. And had they not escaped taxation until they may have

considered themselves privileged to that extent, doubtless the right to impose this tax would have gone unchallenged.

A question is made in the brief as to the right to levy these taxes being a "violation of the commerce clause of the Federal Constitution, § 8, article 1, and the act of Congress of July 2, 1864, granting such right of way and the protection of which is now claimed." This is not briefed, and therefore is abandoned on this appeal. But under the decision of cases cited in Williams v. Talladega, 226 U. S. 404, 57 L. ed. 275, 33 Sup. Ct. Rep. 116, this contention could not be successfully urged. The tax is a local one upon a local business, in no wise connected with interstate business. The taxing power at the utmost cannot in the least, in the enforcement of collection of these taxes, hinder the operation of the road or prevent it from the exercise to the full of all its franchise rights and privileges. Should the sites in question be sold, they would be taken subject to a right to retake them again for railroad use, upon payment of their value, by the railroad under its right of eminent domain, granting that the lien from the taxes levied might devest the property of its railroad use, should it go to tax deed.

The lien which must be defined must extend to the entire leasehold interest of the tenants sufficient to subject their interests or right of occupancy of the site to sale, and also extend to the railroad company's interest or title to said tracts, and constitute a first lien thereon. The taxes, as against all these lessees and the railway company are valid and liens upon the tracts comprising the respective sites, and for the amount of such taxes assessed and levied as for property otherwise omitted from taxation for said years in question. The cross appeal of the state concerning the tax upon said elevator site is sustained, and the trial court will, as to it, reverse its judgment and enter findings and conclusions in conformity with this opinion. Its findings and judgment is affirmed as to the lumber-yard and oil-tank sites. The state will recover its costs on appeal. Judgment will be entered accordingly.