2002 ND 104

**Walter NOWLING, Carol Nowling, Rose Misialek, and Julian Lizakowski, Personal Representative of the Stephie Lizakowski Estate, Plaintiffs and Appellees,**

v.

**BNSF RAILWAY, Defendant,**

**and**

**Bill Slominski d/b/a Minto Grain, LLC, Defendant and Appellant.**

**No. 20010302.**

Supreme Court of North Dakota.

July 11, 2002.

Rehearing Denied Aug. 15, 2002.

Robert C. Fleming (argued), and Neil W. Fleming (appeared), Fleming & DuBois, Cavalier, for plaintiffs and appellees.

Steven C. Ekman, Welch and Ekman, Grafton, for defendant and appellant.

David C. Thompson, Grand Forks, for amicus curiae Mark Tibert & Suzi Tibert, Melvin Tibert & Cathy Tibert.

Ronald F. Fischer, Pearson Christensen, Grand Forks, and Nicholas B. Hall, Hodny Currie Lawyers, Grafton, for amicus curiae City of Minto.

VANDE WALLE, Chief Justice.

[¶ 1]   Bill Slominski, doing business as Minto Grain, LLC ("Slominski"), appealed from a judgment quieting title to a tract of land to Walter Nowling, Carol Nowling, Rose Misialek, and Julian Lizakowski, as personal representative of the estate of Stephie Lizakowski ("the Nowling group"). We hold a railroad right of way for an operating railroad line is a public highway under N.D. Const. art. XII, § 13 and is not

subject to adverse possession or acquiescence. We reverse and remand.

I

[¶ 2] This quiet title action involves competing claims to a rectangular tract of land about 460 feet long and between 29 and 42 feet wide. The disputed tract of land is located on the east edge of a railroad right of way that extends two hundred feet from the center of an operating Burlington Northern railroad line in Minto. The 200–foot right of way runs north and south, parallel to Burlington Northern's railroad line. The east edge of the right of way includes a road known as Kilowatt Drive which is adjacent to the disputed strip of land and has a fifteen-foot wide ditch on the east side. The disputed tract of land is situated between four parcels of land owned by members of the Nowling group and land leased by Burlington Northern to Slominski under an "indefinite term lease" for the "sole and exclusive purpose of maintaining and operating" a grain elevator. Burlington Northern's predecessor in interest purchased the railroad right of way from private landowners in 1881.

[¶ 3] In 1999, Slominski and the Nowling group had a disagreement regarding use of the disputed tract of land. The Nowling group brought this action against Slominski and Burlington Northern to quiet title to the land. The Nowling group alleged they were entitled to quiet title under the doctrines of adverse possession or acquiescence. They alleged that they, or their predecessors in interest, had been in actual, open, hostile, continuous, and exclusive possession of the disputed land for more than twenty years and were entitled to ownership by adverse possession. They also alleged the east edge of Kilowatt Drive had been the boundary between their land and the railroad right of way for

100 years, and Burlington Northern's silence constituted acquiescence in the road serving as the boundary. Burlington Northern and Slominski answered, alleging the actual property line between the railroad right of way and the Nowling group's property was several feet east of Kilowatt Drive. Burlington Northern and Slominski claimed that the railroad right of way was a protected public highway under N.D. Const. art. XII, § 13, and, alternatively, that the Nowling group was not entitled to quiet title by adverse possession or acquiescence. In January 2001, Burlington Northern conveyed the leased land to Slominski by quitclaim deed that reserved to Burlington Northern a fifty-foot wide easement for roadway and utilities together with all necessary appurtenant fixtures. Burlington Northern was then dismissed from the action by stipulation.

[¶ 4] The trial court did not explicitly address Slominski's "public highway" claim under N.D. Const. art. XII, § 13, and instead found:

[The Nowling group] or their predecessors in interest have possessed [their four] parcel[s of land] since 1972 and prior to that. That their possession has been continuous.

XIV.

That the plaintiff Walter and Carol Nowling have over the past 24 years, 1976–1999 reshaped the ditch, planted grass, trimmed old elm trees, replanted new trees after removing the elm trees, all constituting acts of possession and ownership. That the aforementioned acts took place on at least portions of the disputed strip of property. There is a clear indication in the testimony of a small ditch on the east side of Kilowatt drive. Based on the photographic ex-

hibits appears to be at most fifteen feet (15') in width.

### XV.

The BNSF railway, the owner of the disputed property did not at any time warn Nowlings of their trespass, or take any action whatsoever to stop their use and enjoyment of this property. By their silence, BNSF acquiesced in the east edge of Kilowatt drive as the boundary or certainly the east edge of the ditch to be the boundary. The [Nowling group] removed old elm trees and replanted an entire row of new trees in approximately 1989. The railroad did nothing, said nothing. According to the survey these trees were planted at least nine feet (9') onto [Slominski's] property. These trees were allowed to grow over the past several years to approximate heights of fifteen to twenty feet (15'–20'). At no time did any of the defendants object until 1999.

The Court finds that the east edge of Kilowatt drive and the east edge of the ditch, although varying slightly from year to year were distinct, certain and nonspeculative, similar to *Knutson* [*v. Jensen*, 440 N.W.2d 260 (N.D.1989)]. This Court is allowing a fifteen-foot (15″) [sic] strip on the basis that this portion could have been viewed by the defendants as part of the roadway. Many roadways in rural North Dakota commonly have a ditch area that is considered part of the roadway.

The court decided the Nowling group clearly and convincingly established the parties had acquiesced in a boundary between their property, which, although there had been slight variations, was the beginning of the Nowling group's yard. The court quieted title to the Nowling group in the land east of the ditch, which resulted in the Nowling group receiving title to a rectangular strip of land 458.8 feet long and from 14 to 27 feet wide and located 15 feet east of Kilowatt Drive.

### II

[¶ 5] Slominski argues a railroad right of way is a public highway under N.D. Const. art. XII, § 13, which may not be taken by adverse possession or acquiescence. The Nowling group responds there is no constitutional prohibition against adverse possession of this railroad right of way, because Burlington Northern's predecessor in interest originally purchased the right of way from private landowners and, although Burlington Northern operates a train on the right of way, the actual disputed tract of land has been abandoned and not used by the railroad since at least 1972.

[¶ 6] Article XII, § 13, N.D. Const., provides that "[r]ailways heretofore constructed or that may hereafter be constructed in this state are hereby declared public highways."

[¶ 7] In *Lincoln v. Great Northern Ry. Co.*, 26 N.D. 504, 144 N.W. 713 (1913), this Court considered an appeal involving a landowner's action to compel a railroad to reduce the elevation of its track at a private crossing. Initially, the landowner had deeded the railroad a right of way through his land for the track, and the railroad established a private crossing over the track for the landowner. Later, the railroad raised the grade of the track to accommodate a raised grade at a nearby bridge, and because of an adjacent road, the railroad was unable to retain a gradual approach to the private crossing. The landowner contended he had acquired an interest in the railroad property itself, and he sued the railroad to enforce his claim in the private crossing. This Court held the pleadings established the railroad had not been ousted from the crossing, and during the entire time of the landowner's alleged prescription, the railroad was using the crossing in the same manner it was using the rest of its track. *Lincoln*, 26 N.D. at 509, 144 N.W. at 714. This Court concluded the landowner had not proven a prescriptive right to the private crossing. *Id.*

at 510–11, 144 N.W. at 714. On petition for rehearing, the landowner claimed his complaint alleged the railroad had "granted [him] a private way over its roadbed and railway tracks" and the railroad's answer admitted the existence of a "private way." *Id.* at 511, 144 N.W. at 715. Although this Court did not explicitly cite the predecessor to N.D. Const. art. XII, § 13, *see* 1889 N.D. Const. art. VII, § 142, it nevertheless recognized the public interest involved when a railroad right of way is used for railroad purposes:

> the railway company had no right to grant any easement in the land inconsistent with its own use of the right of way for railroad purposes. This for the reason that the railroad company is itself a public servant and its own interest in the land is largely in the nature of an easement.

*Lincoln,* 26 N.D. at 511, 144 N.W. at 715.

[¶ 8] In *A & M Properties, Inc. v. Norfolk Southern Corp.,* 203 W.Va. 189, 506 S.E.2d 632, 633–34, 637 (1998), the West Virginia Supreme Court of Appeals held a railroad track was considered a public highway under W. Va. Const. art. XI, § 59, which provided that "[r]ailroads heretofore constructed, or that may hereafter be constructed in this State, are hereby declared public highways." The court concluded because adverse possession did not lie against a public highway, no party could establish an interest in a railroad right of way by adverse possession as long as the track was used for railroad purposes. *A & M Properties,* at 637.

[¶ 9] In *Gustin v. Scheele,* 250 Neb. 269, 549 N.W.2d 135, 140 (1996), the Nebraska Supreme Court considered a similar issue under Neb. Const. art. X, § 4, which provided "[r]ailways heretofore constructed, or that may hereafter be constructed, in this state are hereby declared public highways." In *Gustin,* the railroad had acquired a right of way from private landowner in 1887, and in 1982, the plaintiffs acquired land abutting the railroad's right of way. In 1985, the railroad discontinued operation of a line on the right of way. In 1987, the railroad quitclaimed the right of way to a third party, and the third party subsequently quitclaimed the right of way to the defendant in 1993. The Nebraska Supreme Court affirmed a judgment quieting title to a track of land to the plaintiff. *Gustin,* at 144. The court held railroad property that was acquired from a private landowner and held in fee simple was subject to adverse possession, but, to be consistent with the constitutional provision, the court allowed adverse possession only against railroad property that was not designated for the railroad's line or other railroad operations. *Id.* at 143.

[¶ 10] In *Meiers v. Wang,* 192 Wis.2d 115, 531 N.W.2d 54, 60 (1995), the Wisconsin Supreme Court held public policy did not bar a private citizen's claim for adverse possession of a railroad right of way which had been acquired by the railroad from a private landowner. The court concluded the nature of a railroad right of way acquired by private sale was different from a thoroughfare dedicated as a public road by the state, and an action against a railroad who acquired a right of way by private sale did not implicate the state, or its interest in acquiring the land for a public purpose. *Id.* The court concluded the railroad, as a private landowner, had an obligation to monitor its right of way for trespassers, squatters, and encroachers, and faced the same risks of adverse possession as all other private landowners. *Id.* Significantly, the Wisconsin Supreme Court did not rely on, or cite a constitutional provision similar to N.D. Const. art. XII, § 13, and the court effectively concluded a railroad right of way acquired by private sale was not a public highway.

[¶ 11] The common thread from these cases is that although railroad property

acquired by private sale and held in fee simple may be subject to adverse possession, in states with a constitutional provision similar to N.D. Const. art. XII, § 13, a railroad right of way for an operating railroad line is a public highway which may not be taken by adverse possession.

■ [¶ 12] Here, the Nowling group concedes Burlington Northern is operating a railroad line in Minto, but they argue the part of the right of way sought by them has been abandoned by the railroad and has not been used by it since at least 1972. We decline, however, to parse part of an operating railroad's right of way on an allegation that part of the land has been abandoned or not subject to railroad operations. *See* N.D.C.C. § 49–09–04.2 (requiring railroads with abandoned line to first offer right of way for public purposes, then to lessee operators of grain and potato warehouses located on the property, and then to adjoining agricultural landowners). Generally, abandonment of a railroad right of way is a question of intent, and the most significant indicia of abandonment is the nonuse of the right of way for railroad purposes. *See* Annot., *What Constitutes Abandonment of a Railroad Right of Way*, 95 A.L.R.2d 468, § 2 (1964). We agree with the rationale of *Cash v. Southern Pac. R.R. Co.*, 123 Cal.App.3d 974, 177 Cal. Rptr. 474, 476 (1981) (citations omitted):

> In this case, respondents have not ceased operating a railroad at the property. The fact that presently respondents have not made use of all of the "right of way" is of no consequence. Respondents may at some time want to use more land for side-tracks, or other railroad purposes, and until then they are entitled to have the land clear and unobstructed. A railroad's construction and operation of one track on its location is an assertion of right to the entire width of its right of way. A right of way or easement granted to a railroad "is not that spoken of in the old law books, but is peculiar to the use of a railroad which

is usually a permanent improvement, a perpetual highway of travel and commerce, and will rarely be abandoned by nonuser . . . ."

■ [¶ 13] Here, the Nowling group concedes Burlington Northern operates a railroad line on the right of way, and we decline to conclude the alleged nonuse of a part of the right of way constitutes an abandonment of that property. Moreover, although the Nowling group does not directly argue Burlington Northern's lease of the right of way constitutes an abandonment, Burlington Northern's "indefinite term lease" explicitly leased the right of way for operation of a grain elevator. The Legislature has enacted statutory provisions assuring elevators and public warehouses the right to maintain and operate as elevators or warehouses on the railroad right of way. N.D.C.C. ch. 60–06. Courts in other states generally have recognized the lease of a railroad right of way to a private business does not constitute abandonment where the lease reserves a right to terminate if the land is needed for railroad purposes, and a railroad's lease of right of way for a use that is compatible with railroad purposes does not constitute an abandonment of the right of way. *See Allen v. Martin Marietta Corp.*, 26 N.C.App. 700, 217 S.E.2d 112, 116 (1975). *See generally* Annot. 95 A.L.R.2d 468, at § 8. This court has recognized the elevator industry's usual business involves receiving, shipping and marketing grain, and the very nature of the elevator industry is such that elevators conduct their business upon a railroad right of way and near an operating track. *See Northern Pac. Ry. Co. v. Morton County*, 32 N.D. 627, 638–41, 156 N.W. 226, 229 (1915). In North Dakota, the use of a railroad right of way for a grain elevator is compatible with the use of land for railroad purposes and is not indicative of an intent to abandon the right

of way. Rather, in apparent dicta, this Court has stated "it is doubtful at least if the railroad company can by mere abandonment forfeit any right of necessary railroad user." *Id.* at 641, 156 N.W. at 230.

[¶ 14] We conclude under N.D. Const. art. XII, § 13, the right of way for an operating railroad is a public highway which is not subject to adverse possession. *Cf. Cook v. Clark,* 375 N.W.2d 181, 183 (N.D.1985) (in action to establish boundary by acquiescence, recognizing general rule that title to land held by the state in any capacity cannot be obtained by adverse possession or prescription). Because acquiescence evolved from and is a supplement to the doctrine of adverse possession, *see Production Credit Ass'n v. Terra Vallee, Inc.,* 303 N.W.2d 79, 83–84 (N.D.1981), we conclude the part of the railroad right of way at issue in this case is not subject to the doctrine of acquiescence. Because we conclude the railroad right of way is not subject to the doctrine of acquiescence, it is not necessary to consider Slominski's argument that the trial court erred in finding the parties had acquiesced in the boundary between their land.

### III

[¶ 15] We reverse the judgment and remand for entry of judgment consistent with this opinion.

[¶ 16]DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.